2009 ME 11

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

v.

**Vincent S. PELLETIER.**

Supreme Judicial Court of Maine.

Argued: March 12, 2008.
Decided: Feb. 5, 2009.

Julie Carp, Student Attorney (orally), Deirdre Smith, Faculty Supervisor, Portland, ME, for Vincent S. Pelletier.

G. Steven Rowe, Attorney General, Michele D. Kenney, Asst. Atty. Gen., Carlos Diaz, Asst. Atty. Gen. (orally), Office of the Attorney General, Caribou, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1]   Vincent S. Pelletier appeals from an order of the District Court (Caribou, *Daigle, J.*), which ruled in favor of the Department of Health and Human Services on its claim for child support.  Pelletier acknowledged paternity of the child at birth but learned ultimately that he is *not* the father of the child.  The Department seeks child support for a five-year period that preceded an order of nonpaternity. The family law magistrate (*Langner, M.*) found in favor of Pelletier after concluding that the Department had waived its right to seek child support.  The District Court vacated the magistrate's order due to insufficient evidence of waiver.  The District Court did not address the magistrate's finding that Pelletier is not entitled to judgment on his defense of equitable estoppel.  We affirm the District Court's order rejecting Pelletier's affirmative defense of waiver, but we vacate the magistrate's order rejecting Pelletier's affirma-

tive defense of equitable estoppel, and we remand to give the parties the opportunity to fully develop the factual record with respect to equitable estoppel in a new hearing.

## I. BACKGROUND

[¶ 2] The facts presented at the hearing before the family law magistrate are as follows: The child at issue in this proceeding was born in December 1999, in Caribou. Pelletier was dating the mother at the time and, believing he was the child's father, signed an acknowledgment of paternity. In February 2000, Pelletier and the mother broke off their relationship, and Pelletier began to question whether the child was his.

[¶ 3] Pelletier contacted a Department agent, who told him that the Department would not pay for a paternity test because Pelletier's request for testing came more than sixty days after the child's birth. Pelletier began to save money so that he could obtain the test. The Department also suggested that Pelletier speak with an attorney.

[¶ 4] In May 2000, the Department served Pelletier with a notice of proceeding to establish child support, which notified Pelletier that he owed child support from February 2000. In June 2000, Pelletier notified the Department by phone that he would be taking the paternity test. The Department told Pelletier that it would wait for the results of the test before taking further steps to establish child support. An agent of the Department testified that the Department told Pelletier that, even if the test results were negative, he would have to go to court to override the acknowledgment of paternity.

[¶ 5] Pelletier took the test in June 2000. The undisputed results demonstrat-

ed that Pelletier is not the child's father. In July 2000, Pelletier notified the Department of the test results. The Department told him that it would not proceed against him at that time to establish child support. Pelletier believed that he was not going to be liable for child support because the Department had acknowledged that he was not the child's father. Pelletier testified that he did understand that he needed to file other papers to get his name removed from the child's birth certificate, but he believed that this was separate from any liability for child support.

[¶ 6] From August 2000 through July 2002, Pelletier was incarcerated in Maine.[1] After he was released, he left Maine in violation of his probation. During his time in jail and while he was out of state, Pelletier took no action to remove his name from the birth certificate.

[¶ 7] Meanwhile, in February 2002, the Department met internally to discuss Pelletier's case and concluded that it would not seek child support from Pelletier at that time. This decision was based in part on the Department's expectation that it would be able to recoup any arrearage from a putative father who was being investigated.

[¶ 8] Later that year, however, the Department renewed its efforts to serve Pelletier. The Department eventually attempted service once in 2002 and once in 2004. The Department was unable to locate Pelletier with either attempt. The Department persevered in its action against Pelletier in order to obtain the change in Pelletier's status that was required before the Department could proceed against the biological father.

[¶ 9] Pelletier returned to Maine in January 2005, and was arrested and incar-

---

1. The parties dispute the length of time Pelletier was incarcerated.

cerated in April 2005. He was served in jail with a notice of proceeding to establish child support. In June 2005, the Department and Pelletier agreed to the entry of an order of nonpaternity. The Department did not, however, withdraw its action for child support arrears for the period from March 2000 to March 2005.

[¶ 10] The magistrate ruled in favor of Pelletier on his affirmative defense of waiver but rejected his defense of equitable estoppel. The Department filed an objection to the magistrate's order on the issue of waiver. The District Court vacated the magistrate's order on the issue of waiver but did not address the magistrate's decision on equitable estoppel. The magistrate then issued a brief order stating that, pursuant to the District Court's order, waiver was not proved by a preponderance of the evidence and setting forth the amount owed in child support. Pelletier filed a notice of appeal.

## II. DISCUSSION

[¶ 11] Before we turn to the standard of review, we first address the Department's argument that Pelletier waived his right to appeal. The Department bases its argument on Pelletier's failure to object to the second of the two orders issued by the magistrate. Rule III(G)(2) of the Rules for the Family Division of the District Court[2] requires any party who wishes to appeal a magistrate's final order to first file an objection in the District Court.

[¶ 12] Pelletier did not waive his right to appeal. Pelletier had no reason to object to the magistrate's first order because it was decided in his favor on the waiver

defense. The District Court reviewed that order in response to the Department's objection. The Department did not request review of the magistrate's decision on equitable estoppel because that had been decided in the Department's favor. The District Court therefore did not address the issue of equitable estoppel. The magistrate's second order simply noted the District Court's decision on the waiver defense and set the amount of child support owed.

[¶ 13] It would have been preferable if Pelletier had filed an objection to the magistrate's second order or if the District Court had treated his notice of appeal as an objection pursuant to M.R. Fam. Div. III(G)(2)(a). However, Rule III(G)(2)(a) provides that an objection shall not be dismissed solely because it is erroneously captioned as a "notice of appeal." We therefore cannot conclude, in light of the procedural posture of this case at the time the notice of appeal was filed, and in light of the obviously ameliorative purpose of Rule III(G)(2)(a), that Pelletier waived his right to appeal.

[¶ 14] We have not previously had occasion to identify the orders we review when an appeal is taken after the District Court vacates a family law magistrate's order. When the District Court adopts the magistrate's order, we review the magistrate's order directly. *Sylvester v. Vitagliano*, 2002 ME 141, ¶¶ 4 & n. 2, 9, 804 A.2d 391, 392, 393–94. When the District Court adopts the magistrate's findings and conclusions but modifies the judgment to embrace an additional legal conclusion based on those findings, we re-

---

2. Rule III(G)(2) of the Rules for the Family Division of the District Court, as with all of the Family Division Rules, is abrogated, effective January 1, 2009, but Rule III(G)(2) applies to this case nonetheless because it was in effect at the time Pelletier appealed. The Family Division Rules are now incorporated into chapter XIII of the Maine Rules of Civil Procedure. M.R. Civ. P. 125.

view directly both the magistrate's decision and the District Court's modification. *Ezell v. Lawless,* 2008 ME 139, ¶ 13, 955 A.2d 202, 206. We now hold that the same rules apply when the District Court has vacated a family law magistrate's decision. Thus, in the present case, we review the District Court's ruling on the issue of waiver, but because the District Court did not address the magistrate's decision on the issue of equitable estoppel, we review the magistrate's decision directly on that issue.

[¶ 15] We review a judgment on a defense of waiver for clear error as to factual findings and de novo as to whether those findings are sufficient to constitute waiver. *Estate of Barrows,* 2008 ME 62, ¶ 3, 945 A.2d 1217, 1219. We review a judgment on a defense of equitable estoppel for clear error as to factual findings and for abuse of discretion as to the application of principles of equity to those facts. *See Salisbury v. Town of Bar Harbor,* 2002 ME 13, ¶ 9, 788 A.2d 598, 601.

[¶ 16] We now turn to the merits, addressing first the District Court's rejection of Pelletier's affirmative defense that the Department waived its right to seek child support from him. The District Court correctly determined that the facts of this case do not support a finding of waiver by the Department. "Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." *Dep't of Human Servs. v. Bell,* 1998 ME 123, ¶ 6, 711 A.2d 1292, 1294–95 (quotation marks omitted). The Department did not voluntarily and knowingly relinquish its right to seek child support payments. On two occasions, in 2000 and 2002, the Department opted not to proceed to establish child support. At some point, however, the Department changed course, and in 2002 and 2004, it tried unsuccessfully to serve Pelletier. Finally, in 2005, the Department found and served Pelletier. This course of conduct is not consistent with a voluntary and knowing waiver of the Department's right to seek child support.

[¶ 17] Pelletier's other affirmative defense is equitable estoppel. The District Court did not address the magistrate's decision to reject Pelletier's equitable estoppel defense. Equitable estoppel precludes a party "from asserting rights which might perhaps have otherwise existed, ... against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Waterville Homes, Inc. v. Maine Dep't of Transp.,* 589 A.2d 455, 457 (Me.1991) (quotation marks omitted); *accord City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 714 (Me.1990). Equitable estoppel may be applied to the activities of a governmental official or agency in the discharge of governmental functions. *F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 860 (Me.1992). To prove equitable estoppel against a governmental entity, the party asserting it must demonstrate that (1) the statements or conduct of the governmental official or agency induced the party to act; (2) the reliance was detrimental; and (3) the reliance was reasonable. *Tarason v. Town of S. Berwick,* 2005 ME 30, ¶ 15, 868 A.2d 230, 234; *Kittery Retail Ventures, LLC v. Town of Kittery,* 2004 ME 65, ¶ 34, 856 A.2d 1183, 1194, *cert. denied,* 544 U.S. 906, 125 S.Ct. 1603, 161 L.Ed.2d 279 (2005). An equitable estoppel defense that is based on reliance on the governmental agency's silence must be proved by "clear and satisfactory" evidence. *Bell,* 1998 ME 123, ¶ 8, 711 A.2d at 1295; *Desgrosseilli-*

*ers,* 578 A.2d at 715 n. 4. When reviewing an equitable estoppel defense, we consider "the totality of the circumstances, including the nature of the government official or agency whose actions provide the basis for the claim and the governmental function being discharged by that official or agency." *Kittery Retail Ventures,* 2004 ME 65, ¶ 34, 856 A.2d at 1194 (quotation marks omitted).

[¶ 18] Equitable estoppel requires a misrepresentation. *Bell,* 1998 ME 123, ¶ 8, 711 A.2d at 1295. A misrepresentation need not consist solely of an affirmative statement; it may arise through a combination of misleading statements, conduct, or silence. *Id.* The magistrate found that the Department did not make any misrepresentations to Pelletier, but it is not clear that the magistrate considered whether the Department's combination of statements, conduct, and silence induced Pelletier to believe that the Department would not seek child support and whether Pelletier reasonably relied on the Department's conduct to his detriment. Furthermore, it appears that the Department was unaware that Pelletier, who was not represented by counsel at the time, had even asserted this defense.[3] The Department therefore has not had the opportunity to offer evidence that is specifically relevant to equitable estoppel. For these reasons, we remand for a hearing on the defense of equitable estoppel and we refrain from determining whether the magistrate abused his discretion in applying the

principles of equitable estoppel to the facts found at the hearing.

[¶ 19] Equitable estoppel must be evaluated with circumspection and applied judiciously in the context of child support actions brought by the Department. Nevertheless, this defense is available in situations when failing to recognize it "would be inconsistent with the demands of fairness and justice." *Desgrosseilliers,* 578 A.2d at 715. We express no opinion about whether the facts currently in the record are sufficient to support a judgment in Pelletier's favor on equitable estoppel because the factual record must be fully developed at the hearing following remand.

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the District Court for further proceedings consistent with this opinion.

---

**3.** Had the Department had an opportunity to present evidence on the question of equitable estoppel, it indicates that it would have introduced the letter provided to us on appeal, apparently sent to Pelletier in 2002, in which the Department reminded Pelletier that "[y]our name remains on [the] birth certificate ... and you still run the risk of being obligated to pay child support," and that "[o]nce you signed the Acknowledgment of Paternity for [the child], you took responsibility as his father, and you are still legally his father. Only a court can overturn your acknowledgment." Had the issue been tried, the letter might have provided additional support for the proposition that the Department did not affirmatively mislead Pelletier as to his child support obligations and did attempt to underscore the requirement that he legally revoke his acknowledgment of paternity.