STATE OF MAINE                          BUSINESS & CONSUMER COURT
Cumberland, ss.                         Location: Portland
                                        Docket No.: BCD-RE-2015-02 ✓


GLEN T. CRAIG & SANDRA J. CRAIG,

                Plaintiffs,

        v.

E-TRADE BANK,

                Defendant


## DECISION AND JUDGMENT

Plaintiffs Glen and Sandra Craig have brought this action against Defendant E-Trade Bank [E-Trade], seeking to compel the discharge of a mortgage E-Trade holds on Plaintiffs' residence to secure a home equity line of credit (HELOC) granted to Glen Craig only.

Plaintiffs assert that E-Trade was required to discharge its mortgage because the Plaintiffs paid off the entire amount owed to E-Trade on the HELOC on or about January 9, 2007. E-Trade has filed a counterclaim, seeking a declaration that its mortgage remains valid, that the HELOC is a valid open-end line of credit, and that the mortgage secures the entire unpaid balance on the HELOC. E-Trade also seeks a declaration that Plaintiffs' Complaint triggers a mortgage provision entitling E-Trade to reimbursement of its attorney's fees and expenses incurred in defending the present suit.

Trial was to the court without a jury on September 4, 2015. The parties' counsel presented the testimony and exhibits in an efficient and effective manner and presented written stipulations as to many underlying facts. Based on the entire record, the court adopts the following findings of fact and conclusions of law, and renders judgment as set forth below.

*Background*

Plaintiffs Glen and Sandra Craig are husband and wife, and at all relevant times their primary residence has been at 25 Sheepscot Shores Road, Wiscasset, Maine (the "Property"). Mr. Craig has substantial business experience, having worked at the Wiscasset Ford dealership from 1986-2003 in a variety of positions, including finance manager, and also having operated a State Farm insurance agency. As a result of various forms of employment over the course of his career, he has extensive experience with loan documents and other financial records.

On or about September 9, 2003, Mr. Craig executed a Home Equity Line of Credit ("HELOC") Agreement in favor of E-Trade with a credit limit of $200,000.00. (Stip. Fact A(1).) Sandra Craig did not sign the HELOC Agreement. (*Id.* at B(2).) The HELOC Agreement provides, in pertinent part, that the term of Mr. Craig's credit line begins as of September 9, 2003 "and will continue until August 9, 2020[.]" (Stip. Ex. 1, 1.) The HELOC Agreement creates "a revolving line of credit for the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00), which will be your *Credit Limit* under this Agreement." (*Id.*) Pursuant to the Agreement, Mr. Craig "may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit." (*Id.*)

In order for Mr. Craig to cancel his "right to credit advances under [the HELOC] Agreement," he "must notify [E-Trade] and return all Credit Line Checks and any other access devises to [E-Trade]." (*Id.* at 3.) Despite cancellation, Mr. Craig's obligations under the HELOC Agreement "remain in full force and effect until [he has] paid [E-Trade] all amounts due under th[e] Agreement." (*Id.*)

At the same time Mr. Craig executed the HELOC Agreement, both Plaintiffs executed a mortgage ["the Mortgage"] in favor of E-Trade, to secure the HELOC with the Property.

2

(Stip. Fact A(3).) The Mortgage provides, in pertinent part under the heading **LENDER'S**

**OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**:

> When Lender has been paid all amounts due under the Credit Agreement and under this Security Instrument I elect to terminate the Credit Agreement [./,][1] Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the official records.

(Stip. Ex. 2, 4.)

Pursuant to the HELOC agreement, Mr. Craig was able to draw on the HELOC simply by writing and issuing checks provided by E-Trade for that purpose. E-Trade made advances on the HELOC by honoring the checks. Between September 9, 2003 and January 3, 2007, Mr. Craig wrote and issued a series of checks on the HELOC, resulting in an outstanding balance of approximately $202,000 as of the beginning of January 2007. (Stip. Fact A(5).)

Sometime before January 2007, the Craigs decided to refinance their indebtedness on the residence. On January 3, 2007, a closing on the refinancing took place. The Craigs executed a note and mortgage in favor of Megastar Financial Corp. [Megastar], using the proceeds of the new Megastar loan to pay off the entire balance on the E-Trade HELOC and also a payment to another secured lender on the Craig property. The closing documents note that Megastar paid $204,023.38 as a "Payoff to E*Trade Bank" and $352,964.16 to "Merrill Lynch." (*See* Stip. Ex. 7, 1; Stip. Fact B(3).) The result of the payment to E-Trade was that the balance due was paid in full and more, leaving a credit balance of $90.45 on the HELOC account. (*Id.* at A(6).)

On January 3, 2007, in connection with the refinancing, Mr. Craig executed a document entitled "Line of Credit Payoff Request Form" (the "Payoff Form"). (Stip. Fact A(7).) Mrs.

---

[1] The brackets enclose a period and a comma because the punctuation mark in question could be either.

Craig did not sign the Payoff Form. (*Id.* at B(2).) The Payoff Form provides two payoff options, set forth in blocks of type, with adjacent boxes to be checked if the option is selected:

☐ **Payoff only** – All or part of the outstanding balance is being paid. Do not suspend my ability to continue to use this account, or,

☐ **Payoff, Terminate and Satisfy/Discharge Mortgage** – Upon the Bank's receipt of payment of the entire outstanding balance, terminate my home equity line of credit so that: (1) no further borrowings under the line of credit can take place, and (2) the mortgage will be satisfied/marked discharged.

(Stip. Ex. 3.)

Following an additional paragraph, the Payoff Form states, in bold type:

**If neither block is checked, the account will remain open and no satisfaction of mortgage will be filed.**

When he completed the Payoff Form, Mr. Craig did not check either of the two blocks.

Immediately beneath this sentence is a signature block that was signed and dated by

Mr. Craig on January 3, 2007. (*Id.*) Below Mr. Craig's signature, the Payoff Form provides in

bold type:

**Notice to Borrower and Closing Agent: A request to terminate/close your home equity line of credit account and satisfy the mortgage will be process if (1) the second block is checked, (2) all amounts owed are paid in full and, (3) at least one borrower on the account signs this payoff request. If this form is unsigned, your ability to continue using the account will not be affected.**

(*Id.*)

The Craigs' intent in refinancing was to discharge the E-Trade mortgage in favor of a

mortgage to Megastar. However, E-Trade was not requested to discharge the Mortgage,

either by Megastar or the Craigs, nor does either the HELOC or the Mortgage require E-

Trade to discharge the Mortgage without also terminating the HELOC. By definition, a

HELOC is a HELOC because it is secured by the borrower's equity in a residence.

4

Because it had not been asked to terminate the HELOC, E-Trade kept the HELOC open after the January 2007 payoff and continued to send monthly account statements to the Craigs. On or about January 15, 2007, February 15, 2007, March 15, 2007, and April 15, 2007, Plaintiffs received statements from E-Trade detailing the credit balance of the HELOC, and indicating that the $200,000.00 line of credit remained available for advances. (Stip. Fact A(11).)

In April 2007 Mr. Craig began writing and issuing checks on the HELOC, thereby causing E-Trade again to make advances. On or about April 18, 2007, Mr. Craig wrote and issued a check to himself for $80,000.00. (*Id.* at A(13).) Subsequently, Mr. Craig wrote and issued more checks on the HELOC, all made payable to himself, the last dated November 17, 2009.[2] (*Id.* at A(14)-(17).) Between June 4, 2007 and January 15, 2014, the Craigs made 58 payments towards the HELOC totaling $74,675.10. (*Id.* at A(19).) This resulted in an unpaid balance, including interest, charges, and fees, of $161,595.60 as of May 15, 2014.[3] (*Id.* at A(20).)

Because the HELOC was in Glen Craig's name only, Sandra Craig could not write checks on the line, but she knew that Mr. Craig was writing checks on the HELOC after the January 2007 refinancing—several payments made on the HELOC after the refinancing were by means of checks signed by her and drawn on the Craigs' joint checking account at a local bank. *See* Stip. Ex. 13.

Plaintiffs' Complaint requests that this Court order E-Trade to discharge the Mortgage, thereby rendering Mr. Craig's indebtedness to E-Trade an unsecured obligation. (Stip. Fact A(21).) The Mortgage contains the following language at page two:

---

[2] Specifically, Mr. Craig, by writing and issuing checks to himself, requested and received the following advances on the HELOC after January 3, 2007: April 18, 2007 advance for $80,000.00; December 14, 2007 advance for $10,000.00; January 18, 2008 advance for $60,000; September 25, 2008 advance for $25,000.00; and November 17, 2009 advance for $20,000.00. (*See* Stip. Exs. 8-12).

[3] This amount is based on an interest bearing balance of $158,680.88.

LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE. If (A) I do not keep my promises and agreements made in this Security Instrument, or (8) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph, Lender does not have to do so.

To the extent permitted by law, I will owe Lender any amounts, with interest, which Lender spends under this Paragraph. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Credit Agreement rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

(*Id.* at A(22); Stip. Ex. 2, 2.)

By letter from E-Trade's counsel to Plaintiffs' counsel of record on September 26, 2014, E-Trade sent Plaintiffs notice that it would expend funds to defend itself against the Complaint and prosecute its Counterclaim if the Complaint was not withdrawn. (*Id.* at A(24).) The September 26, 2014 letter cited above constituted notice to Plaintiffs as specified by the provision of the Mortgage. (*Id.* at A(25).)

## I.    *Analysis*

Plaintiffs do not dispute that as of May 15, 2014 there is an unpaid balance under the HELOC Agreement of $161,595.60 based upon an interest bearing balance of $158,680.88. (Stip. Fact A(20).) They argue, however, that the January 3, 2007 payment to E-Trade, combined with the Payoff Form, effectively discharged the Mortgage on the Property. In other words, Plaintiffs assert that the $161,595.60 owed is not secured by the Mortgage on the Property. In support of this position, Plaintiffs ask: If the January 3, 2007 payment by Megastar on their behalf to E-Trade was not intended to discharge the Mortgage, then what

6

was the payment for? Certainly, the payment was not a gift. Instead, they contend that the payment was in return for a discharge of the Mortgage.

E-Trade argues that the HELOC Agreement is an open-ended credit agreement pursuant to which Mr. Craig could pay down or take out additional money as he wished—within the limits of the Agreement. In addition, the plain terms of the HELOC Agreement, read in conjunction with the Mortgage, indicate that the HELOC Agreement must be terminated before the Mortgage securing the Agreement can be discharged.

Because Mr. Craig did not request to terminate the HELOC Agreement pursuant to the plain terms of the "Payoff Form," E-Trade argues that it was under no obligation to discharge the Mortgage. Furthermore, E-Trade contends that Plaintiffs' use of the HELOC after the refinancing contradicts their claim that they assumed the Mortgage was discharged as a result of the refinance. Therefore, E-Trade contends that it did not violate 33 M.R.S. § 551—authorizing damages if a mortgagee fails to discharge a mortgage within 60 days of the full performance of the conditions thereof—and that the Court should declare the Mortgage remains valid.

In addition, E-Trade seeks a declaration that as of May 15, 2014, Plaintiffs owe it $161.595.60 plus interests, costs, and fees, and that pursuant to the terms of the Mortgage, Plaintiffs owe E-Trade all attorney fees, costs and expenses E-Trade incurred defending and prosecuting the present dispute.

33 M.R.S. § 551 provides, in pertinent part:

> Within 60 days after full performance of the conditions of the mortgage, the mortgagee shall record a valid and complete release of mortgage together with any instrument or assignment necessary to establish the mortgagee's record ownership of the mortgage....

> With respect to a mortgage securing an open-end line of credit, the 60-day period to deliver a release commences after the mortgagor delivers to the address designated for payments under the line of credit a written request to

7

terminate the line and the mortgage together with payment in full of all amounts secured by the mortgage....

Based on the entire record, the court finds and concludes that E-Trade was not required to discharge the Mortgage, that E-Trade did not violate 33 M.R.S. § 551 and that E-Trade's Mortgage on the Property is valid and remains in effect. The terms of the HELOC, the Mortgage and the Payoff Form all provide unequivocal support for this conclusion.

The plain language of the HELOC Agreement provides that in order for Mr. Craig to cancel his right to credit advances thereunder, he "must notify [E-Trade] and return all Credit Line Checks and any other access devises [sic]" to E-Trade. (Stip. Ex. 1, 3.) Furthermore, the HELOC Agreement provides that it will remain "in full force and effect" until Mr. Craig pays E-Trade all amounts due under the Agreement. (*Id.*) Taken together, these terms establish three steps that Mr. Craig had to take in order to cancel the HELOC Agreement: 1) notify E-Trade of his intent; 2) return Credit Line Checks and any other access devices; and 3) pay E-Trade all amounts due under the Agreement.

The Mortgage contemplates similar steps in order to trigger E-Trade's obligation to discharge the Mortgage. Specifically, the Mortgage provides, under a provision entitled, **"LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT,"** that:

> When Lender has been paid all amounts due under the Credit Agreement and under this Security Instrument I elect to terminate the Credit Agreement[./,] Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.

(Stip. Ex. 2, 4.) While there is some uncertainty as to whether the punctuation after "Credit Agreement" is a comma or a period, a period would make the first clause an ungrammatical sentence. Moreover, the uncertainty does not create any ambiguity in defining the requirements to discharge the Mortgage. The provision plainly makes termination of the "Security Agreement" (the Mortgage) contingent, not only on a payoff of all amounts due under

8

the Credit Agreement (the HELOC), but also on termination of the HELOC. Thus, the conditions for terminating the Mortgage are the same as those of the mortgage statute: "[A] written request to terminate the line and the mortgage together with payment in full of all amounts secured by the mortgage . . ." 33 M.R.S. § 551.

Lastly, the Payoff Form makes crystal-clear in bold type the result of not putting a check mark beside either option listed on the form: "**"If neither block is checked, the account will remain open and no satisfaction of mortgage will be filed.**" (Stip. Ex. 3.) It is undisputed that Mr. Craig did not check off either option.

Mr. Craig in his trial testimony did not explain why he did failed to check either of the two options listed on the Payoff Form. The uncertainty as to his intention is irrelevant, however, because there had to be an affirmative request to terminate the HELOC before E-Trade had any duty either to terminate the HELOC or discharge the mortgage.[4] *See, e.g.*, *Biron v. Mills*, 519 A.2d 1265, 1268 (Me. 1987) ("uncommunicated intention was insufficient to constitute an acceptance so as to create a binding contract"); *Zamore v. Whitten*, 395 A.2d 435, 439 (Me. 1978) (same).

The terms of HELOC, the Mortgage and the Payoff Form as completed by Mr. Craig, and the further evidence in the record, all plainly point to the same conclusions:

- No request for termination of the HELOC was made by Mr. Craig

- Payoff of the balance due, standing alone, does not terminate the HELOC or the Mortgage

- E-Trade was not required to discharge the Mortgage as a result of the January 2007 payoff of the entire balance due

---

[4] Beyond the Payoff Form completed by Mr. Craig, Plaintiffs did not allege or present evidence of any communication to E-Trade regarding their intent to cancel the HELOC Agreement and terminate the Mortgage, before Mr. Craig began making additional draws on the HELOC in April 2008.

- E-Trade did not violate 33 M.R.S. § 551

- The HELOC and Mortgage on the Property were and continue to be valid and enforceable according to their stated terms. [5]

Even were the relevant documents equivocal in some fashion regarding the status of the HELOC and the Mortgage, E-Trade has proved it would be entitled to judgment on the Plaintiffs' claims based on its affirmative defense of estoppel. "Equitable estoppel precludes a party from asserting rights which might perhaps have otherwise existed against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Department of Health and Human Services v. Pelletier,* 2009 ME 11, ¶ 17, 964 A.2d 630, *quoting Waterville Homes, Inc. v. Maine Dep't of Transp.,* 589 A.2d 455, 457 (Me. 1991) (internal quotes and ellipses omitted).

The Plaintiffs' conduct raises an estoppel by silence based on three undisputed facts. First, at the time of the January 2007 refinance, Glen Craig never asked for the HELOC to be terminated and the Mortgage to be discharged as part of the payoff to E-Trade. Second, after the refinance, Glen Craig, with the knowledge of Sandra Craig[6], made further draws on the HELOC, without either Plaintiff telling E-Trade that they considered the Mortgage no longer to be valid. Third, E-Trade honored the post-refinance draw requests in the reasonable good-

---

[5] Nothing in this Decision and Judgment addresses the order of priorities between E-Trade and the holder of the Megastar loan. During the initial discussion with counsel after the case was transferred to the Business and Consumer Court, the court suggested that Megastar or its successor in interest could well be deemed an indispensable party. Both counsel argued otherwise, making it clear that neither side was asking the court to determine E-Trade's priority position vis-à-vis the holder of the Megastar loan. The court agreed not to require the holder of the Megastar loan to be joined, on the basis that the court's ruling would have no *res judicata* or collateral effect as to the Megastar loan.

[6] The fact that Sandra Craig signed some of the checks by which the Plaintiffs made payments on the HELOC after the refinancing means she had to have known that Mr. Craig was continuing to draw on the HELOC. There is no evidence that she objected or otherwise did not consent to all of the post-refinancing draws.

10

faith belief that the HELOC and Mortgage remained valid and enforceable. Thus, E-Trade has met its burden to prove its affirmative defense of estoppel as to both Plaintiffs.

The foregoing determinations compel the further conclusion that E-Trade is entitled to reimbursement, pursuant to the Mortgage provision entitling it to recover the amounts spent in protecting its interest. *See, e.g., Cheung v. Wu*, 2007 ME 22, ¶ 24, 919 A.2d 619. For purposes of the Mortgage provision, there is no doubt that this action, commenced by the Plaintiffs for the purpose of compelling E-Trade to discharge its Mortgage, constitutes "a legal proceeding that significantly affects E-Trade's rights in the Property" as stated in the aforementioned provision of the Mortgage. (Stip. Fact A(23).) However, this provision does not automatically entitle E-Trade to reimbursement for any and all attorneys fees and costs incurred by E-Trade in a legal proceeding challenging its rights. The provision clearly limits E-Trade's entitlement to "the extent permitted by law," meaning essentially in the court's view, that E-Trade would need to prevail in the proceeding in question in order for its right to reimbursement to be triggered, and even then, is entitled only to a reasonable award. If the Plaintiffs were right about E-Trade having to discharge its mortgage, then E-Trade would be hard pressed to persuade the court that any fees or costs should be awarded. Because the decision is in favor of E-Trade and against the Plaintiffs, however, E-Trade has established that it is entitled to invoke the reimbursement provision.

## II. Conclusion

Based on the entire record, the court enters judgment as follows:

1. Judgment on the single count of the Complaint is hereby awarded to Defendant E-Trade Bank.

2. Judgment on Count I of the Counterclaim is hereby awarded to Defendant E-Trade Bank against both Plaintiffs. It is hereby declared as follows, as to both Plaintiffs:

11

- The Home Equity Line of Credit (HELOC) between Plaintiff Glen Craig and Defendant E-Trade Bank is a valid open-ended credit line agreement, enforceable according to its terms, and has not been terminated.

- Defendant E-Trade Bank's Mortgage on the Property owned by Plaintiffs and located at 25 Sheepscot Shores Road, Wiscasset, Maine is, and has been since its execution June 9. 2003 and its recordation in the Lincoln County Registry of Deeds October 1, 2003, a valid mortgage and encumbrance secured by the real estate in question, enforceable according to its terms. The Mortgage constitutes a lien and encumbrance on said Property to secure payment of the balance due on the HELOC, which was $161,595.60 as of May 15, 2014, based upon an interest bearing balance of $158,680.88.

- Because Plaintiffs have not requested to terminate the HELOC, Defendant E-Trade Bank was not—and is not presently—required to discharge the Mortgage on the Property owned by Plaintiffs at 25 Sheepscot Shores Road, Wiscasset, Maine. Accordingly, Defendant E-Trade Bank's refusal to discharge its Mortgage does not violate 33 M.R.S. § 551.

3. Judgment on Count II of the Counterclaim is hereby awarded to Defendant E-Trade Bank against both Plaintiffs. It is hereby declared as to both Plaintiffs:

- This proceeding is "a legal proceeding that may significantly affect Lender's rights in the Property" for purposes of the Mortgage.

- As required by the Mortgage, Defendant E-Trade Bank has given notice of its intent to exercise its right to protect its interest, and accordingly is entitled to reimbursement of its reasonable attorney's fees and other costs and expenses incurred in connection with defense of this proceeding. The amount awarded

may be added to the interest-bearing balance due on the HELOC and the amount secured by the Mortgage.

Defendant E-Trade shall file an application for award of fees and expenses within 30 days, with any objection by Defendants to be filed within 21 days after the application is filed. Defendant E-Trade Bank's entitlement to attorney fees and expenses is not integral to the judgment, meaning that this Decision and Judgment constitutes a final judgment for purposes of any appeal.

4. Defendant's Motion for Summary Judgment, or Alternatively Motion for Partial Summary Judgment is dismissed as moot.

5. Defendant is awarded costs as the prevailing party. Any bill of cost may be filed at the same time as the application for reimbursement permitted above.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated October 5, 2015

A.M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 10-6-15
Copies sent via Mail __ Electronically

**Glen T. Craig and Sandra J. Craig v. E-Trade Bank**

**BCD-RE-15-02**


### Plaintiff

**Glen T. Craig and Sandra J. Craig,**
Counsel: *David Austin, Esq.*
PO Box 638
Rumford, ME 04276


### Defendant

**E-Trade Bank,**
Counsel: *William Fogel, Esq.*
477 Congress St. 5th Floor
Portland, ME 04101