STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-18-49

CHARLES PALIAN, DMD,

Petitioner

v.

**DECISION AND ORDER**

MAINE DEPARTMENT OF
HEALTH & HUMAN SERVICES,

Respondent

Before the court is Petitioner Charles Palian, DMD's Appeal of Final Agency Action pursuant to M.R.Civ.P. 80C against the Maine Department of Health and Human Services. After reviewing the Record, the parties' filings, and considering the parties' arguments at hearing, the court finds that Petitioner's Rule 80C appeal must be denied and the Respondent's decision should be affirmed.

## I.    Background

Petitioner Dr. Palian was an oral surgeon and MaineCare provider in Lewiston, Maine until his retirement in 2013. (R. 1074.) As a MaineCare provider, Dr. Palian was contractually obligated to adhere to MaineCare rules via a Provider Agreement, signed September 11, 2009. (R. 336.) In December, 2014, Valerie Hooper, an employee of the Maine Department of Health and Human Services Program Integrity Unit (the "Department") sent a request for information to Dr.

1

Palian for a post-payment review or audit. (R. 458, 1149.) Ms. Hooper performed

the post-payment review, or audit, selecting at random 100 of Dr. Palian's patients

for which Dr. Palian submitted claims from September 1, 2010, through December

31, 2013. (R. 1149-50.)

On October 2, 2015, the Department issued Dr. Palian a Notice of Violation

reporting that for the 100 randomly-selected patients reviewed during the September

1, 2010 - December 31, 2013 time period, the Department sought $189,770.08 as a

recoupment for various violations.[1] (R. 32.) The Notice of Violation alleged that

Dr. Palian had violated the MaineCare Benefits Manual through: 1) improper or

incomplete documentation for interpreter services, radiographs, anesthesia recovery

times, tooth numbers for tooth extractions and dates of service; 2) improper coding

for non-emergency hospital procedures; 3) improper coding for Versed, Fentanyl,

Ketamine, Propofol, and Valium; 4) billing for drugs above acquisition cost; 5)

duplicate payments, payments for services covered through primary insurance, or

payments not billed to primary insurance; 6) improper coding for comprehensive

oral evaluation; and 7) improper coding for alveoplasty when less than four teeth per

quadrant were extracted. (R. 32-34.)

---

[1] The Department found that the violations constituted a 14.89% error rate, which it multiplied by the entire reimbursement amount for the period audited, i.e., $1,274,480.03, for a total recoupment amount of $189,770.08. (R. 32-34.)

Dr. Palian timely requested an informal review of the Department's Notice of Violation, arguing: 1) documentation for two patients' procedures was provided; 2) the code used for non-emergency hospital procedures was correctly used because a hospital qualifies as an "institution" under the American Dental Association's Dental Procedure Codes; 3) claims for improper documentation for anesthesia recovery times misinterpreted the code requirements; 4) adequate radiograph documentation was provided; 5) claims for overpayments for alveoplasty misinterpreted the code requirements; 6) individual claims for overpayments were unfounded; and, 7) claims for overpayments on drug acquisition costs misinterpreted the code requirements. (R. 83.) Furthermore, Dr. Palian argued that the Department failed to pay him for multiple claims submitted for reimbursement. (R. 83.)

On August 9, 2016, Herb Downs, Director of the Department's Division of Audit, issued a Final Informal Review Decision, revising the overpayment calculation amount to $147,329.89. (R. 104.) Ms. Hooper drafted the decision and provided Mr. Downs with the audit materials, according to standard procedure. (R. 1434-35.) The Final Informal Review Decision overturned the finding of an overpayment on 33 line-items and reduced the finding of an overpayment to a 20% sanction for inadequate documentation, overpayments for drug acquisition costs, supplemental charges for services billed under codes the Department deemed incorrect, and anesthesia recovery time overcharges. (R. 104.)

3

Dr. Palian timely requested an administrative hearing. (R. 151.) On July 17, 2017 and again on January 9, 2018, the Department held an administrative hearing before Hearing Officer Richard Thackeray. (R. 1122, 1325.) After the hearing, the Department reduced its demand to $116,852.05, revising a 100% sanction for lack of documentation of anesthesia recovery times to a 20% sanction. (R. 375.) On June 5, 2018, Hearing Officer Thackeray issued an Administrative Hearing Recommended Decision, finding that the Department correctly established and maintained a recoupment claim against Dr. Palian for $116,852.05. (R. 1076.) In response to Dr. Palian's other arguments, the Hearing Officer concluded that "the Department did not violate Dr. Palian's procedural rights by virtue of Ms. Hooper assisting Mr. Downs during the Final Informal Review." (R. 1078.) The Hearing Officer found that the Department should not be equitably estopped from maintaining a recoupment claim against Dr. Palian. (R. 1090.) Lastly, the Hearing Officer determined that Dr. Palian did not preserve for appeal the argument that the Department abused its discretion (or failed to exercise discretion at all) by imposing the maximum penalty of 20% for improperly documented claims. (R. 1090.)

Dr. Palian filed a Responses and Exceptions to the Recommendations of the Hearing Officer on June 19, 2018. (R. 1094.) On July 3, 2018, Commissioner Ricker Hamilton issued the Final Decision adopting the Recommended Decision.

(R. 1121.) Dr. Palian timely filed this Rule 80C appeal. Oral argument was held on April 23, 2019.

## II.    Standard of Review

When the decision of an administrative agency is challenged on appeal, the court may reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:

1) In violation of constitutional or statutory provisions;
2) In excess of the statutory authority of the agency;
3) Made upon unlawful procedure;
4) Affected by bias or error of law;
5) Unsupported by substantial evidence on the whole record; or
6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007(4) (2018). The court will sustain the administrative decision if, "on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. The court will affirm the findings of fact if there is any competent evidence in the record to support them, even if the record contains other inconsistent or contrary evidence. *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 16, 60 A.3d 1272. The party seeking to vacate the agency's decision bears the burden of proving that no competent evidence exists to support the decision. *Seider*, at ¶ 9.

## III. Discussion

The Department's decision is affirmed on the following grounds: (1) the Department's claims are not barred by equitable estoppel; (2) the Informal Review was conducted by a Department representative who was not involved in the decision under review; (3) Petitioner did not preserve the argument for appeal whether the Department abused its discretion in assigning maximum penalties and, in any event, the Department was not obligated to consider the discretionary factors referenced in the MaineCare Rules; (4) the Department's assessment of penalties for failure to properly document administration of anesthesia adhered to the MaineCare Benefits Manual; (5) the Department's assessment of penalties for incorrectly billing for non-emergency hospital procedures adhered to the MaineCare Benefits Manual; and (6) the Department's determination of overpayment for acquisition costs of drugs adhered to the MaineCare Benefits Maual.

### 1. Equitable Estoppel

Dr. Palian argues that equitable estoppel bars the Department's claims. "To prove equitable estoppel against a governmental entity, the party asserting it must demonstrate that (1) the statements or conduct of the governmental official or agency induced the party to act; (2) the reliance was detrimental; and (3) the reliance was reasonable." *HHS v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. "Equitable estoppel requires a misrepresentation," which may arise through misleading statements,

6

conduct, or silence. *Id.* (quoting *Dept. of Human Servs. v. Bell*, 1998 ME 123, ¶ 8, 711 A.2d at 1295). Dr. Palian further argues that he relied on remittance advice forms stating that claims were "allowed." (R. 1240-41.) Dr. Palian also contends that repeated audits similarly found no billing discrepancies, although the record does not contain evidence of these audits. (Pet'r's Br. 8; Resp't's Br. 13.) The Hearing Officer found that Dr. Palian did not demonstrate a reasonable reliance on the Department's statements, conduct, or silence. (Pet'r's Br. 9.)

The Department counters that reliance on remittance statements was not reasonable because the Provider Agreement and MaineCare Rules state that payments for MaineCare services are subject to post-payment reviews or audits. (R. 341-42.) The Provider Agreement explicitly provides that the Department "may collect any debts, including overpayments through offset or recoupment." (R. 343.) The MaineCare rules state: "[t]he Division of Audit or duly Authorized Agents appointed by the Department have the authority to monitor payments to any MaineCare provider by an audit or post-payment review." (R. 212.) The Hearing Officer correctly concluded that reliance on remittance advice forms was unreasonable in light of the provision for post-payment reviews or audits in the Provider Agreement and the MaineCare rules. Therefore, the Department's claims for overpayment are not barred by principles of equitable estoppel.

## 2. Same Employee Review

Next, Dr. Palian argues that the Department violated its own rules when Ms. Hooper performed and issued the original Notice of Violation and later drafted and prepared the informal review decision, even though the informal review decision was ultimately signed by Mr. Downs. MaineCare Rules state that an informal review "will be conducted by the Director of MaineCare Services, or other designated Department representative who was not involved in the decision under review." (R. 227.) The court defers to an agency's interpretation of its own internal rules and procedures "unless the rule or regulation plainly compels a contrary result." *Downeast Energy Corp.*, 2000 ME 151, ¶ 13, 756 A.2d 948. The Hearing Officer found that Ms. Hooper's participation did not equate to conducting the informal review because the evidence reflected that Mr. Downs was not involved in the decision under review prior to conducting the informal review and he "independently gauged the correctness of her review and conclusions, and adopted those that his judgment determined were correctly reached." (R. 1077-78.)

The MaineCare Rules do not prohibit the person conducting the informal review to avoid utilizing the knowledge and expertise of the staff person who prepared the notice of violation. To conclude otherwise would mean that Mr. Downs would have to obtain the assistance from another staff person who would have to duplicate the work that Ms. Hooper had already done. The process is referred to as

8

an "informal review." Nothing in the MaineCare Rules required Ms. Hooper to be "walled off" from providing support and drafting assistance to Mr. Downs, who had the ultimate responsibility to conduct the review "solely" on the basis of the documents in the Department's possession.[2] Indeed, this appears to be the standard practice the Program Integrity Unit follows with respect to informal reviews. The staff person assigned to the case (here, Ms. Hooper) is required to collect the documentation and prepare a written/oral presentation to the Director, and written findings that will serve as the Final Informal Review Decision for the Director's review and signature. (R. 1024-1025).

Because the MaineCare Rules do not plainly compel the court to overturn the Hearing Officer's finding, it was not an error of law for Ms. Hooper to draft the informal review which was ultimately conducted by Mr. Downs.

### 3. Imposition of the Maximum Recoupment Amounts for Errors

Dr. Palian maintains that the Department abused its discretion by ignoring all relevant factors in determining sanctions by imposing the maximum amounts of recoupment for every violation. The Hearing Officer determined that Dr. Palian did not preserve this argument for appeal and, therefore, waived it. (R. 1091.) MaineCare Rules state: "[i]ssues that are not raised by the provider, individual, or

---

[2] The MaineCare Rules do provide for the possibility of a personal meeting with the provider "to obtain clarification of the materials." It is unclear to the court whether such a personal meeting took place with Dr. Palian.

entity through the written request for an informal review or the submission of additional materials for consideration prior to the informal review are waived in subsequent appeal proceedings." (R. 227.) Generally, in a Rule 80C appeal, petitioners are expected to raise any objections before the agency to preserve those issues for appeal. *New England Whitewater Center, Inc. v. Department of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (1988). In his request for an informal review, Dr. Palian did raise the general issue that the Department should not have issued penalties for the individual claims of reimbursement, but he did not raise the specific issue of whether the Department abused its discretion by imposing the maximum amount of sanctions without using the applicable factors set out in the rule. (R. 83-103.)

Dr. Palian acknowledges as much, but asserts that he could not have raised this issue at the informal review stage because it was only as a result of Ms. Hooper's testimony before the Hearing Officer that it was discovered that the Department did not consider any of the discretionary factors described in the MaineCare Rules pertaining to the imposition of sanctions. *Reply Brief at 5-6.*

The Hearing Officer did not find this argument particularly persuasive and recommended that Dr. Palian be deemed to have waived this issue. The Notice of Violation specifically referenced the fact that a 20% sanction (penalty) was being imposed pursuant to Section 1-19-2(G)(2) of the MaineCare Rules. (R. at 33, 34.)

Dr. Palian, however, in his lengthy written request for an informal review did not ask that the 20% sanction be reduced or eliminated on the basis of the discretionary factors in Section 1-19-3(1). (R. at 218.) Consequently, the Hearing Officer's determination and recommendation that Dr. Palian waived such an argument is supported by the record, and was not an error of law or otherwise subject to reversal by the court.

Nevertheless, the Hearing Officer also addressed the merits of Dr. Palian's argument on this issue and concluded that the Department was not required to apply the factors in Section 1-19-3(A)(1). The MaineCare Rules provide that "[a] penalty not to exceed twenty-percent (20%)," may be applied to a provider if it is shown (by the provider) that covered goods or services were medically necessary, but there was inadequate documentation. Section 1-19-2(G)(2). (R. at 217-218.) Whether to impose a sanction rests with the Commissioner, who may delegate that responsibility to the Directors of the Division of Program Integrity or MaineCare Services. Section 1-19-3-(A). (R. at 218.) "The following factors may be considered in determining the sanction(s) to be imposed:

   a. Seriousness of the offense(s);
   b. Extent of violation(s);
   c. History of prior violation(s);
   d. Prior imposition of sanction(s);
   e. Prior provision of provider education;
   f. Provider willingness to obey MaineCare rules;
   g. Whether a lesser sanction will be sufficient to remedy the problem;

11

> h. Actions taken or recommended by peer review groups, other payors, or licensing boards."

Section 1-19-3(A)(1). (R. at 218-219.)

Finally, Section 1-19-3(B)(1) provides that a sanction may be applied to a provider, an individual or an entity and to all known affiliates of a provider. A sanction, however, may only be applied against an affiliate "on a case-by-case basis after giving due regard to all relevant facts and circumstances." *Id.*

According to Ms. Hooper, it is the Department's standard procedure to apply a 20% penalty unless it is specifically requested to depart from that standard procedure. There is support in the MaineCare Rules for such a procedure since the rules make it clear that the factors identified in Section 1-19-3(A)(1) *may* be considered in determining the sanction to be imposed upon a provider, but *must* be considered if a sanction is to be imposed on an affiliate of a provider. The court cannot say that the Department's interpretation of the MaineCare Rules is plainly wrong or that the Rules compel a result different from the one reached by the Hearing Officer and adopted by the Commissioner.

4. Penalties for Lack of Documentation for Anesthesia Service Time

Dr. Palian asserts that no documentation was required to determine when anesthesia services are considered complete, and therefore the Department's revised claim for a 20% penalty for certain anesthesia services is without merit. Dr. Palian cites to the American Dental Association "Current Dental Terminology" guidelines

12

("CDT") for MaineCare Code D9221 which provides: "anesthesia services are considered complete when . . . the doctor may safely leave the room to attend to other patients or duties." (Pet'r's Br. 16; R. 793.) Dr. Palian testified that monitoring patients for the time in question took place and was medically necessary and that he remained with his patients consistent with claims billed. (R. 1505-08.) The Department argues that MaineCare Rules require the provider to "maintain and retain records sufficient to fully and accurately document the nature, scope, and details" of the services provided to each MaineCare member. (R. 169.) Dr. Palian's testimony that he remained with his patients consistent with the billing for anesthesia services does not remedy the insufficient documentation for those services. The Department assessed penalties for Dr. Palian's lack of documentation based on its interpretation of the MaineCare Rules requiring sufficient records to document the services provided. *See Downeast Energy Corp.*, 2000 ME 151, ¶ 13, 756 A.2d 948. The Hearing Officer found that the Department sustained its burden of demonstrating that the improper documentation warranted a 20% sanction, and there is competent evidence in the record to support that conclusion.

### 5. Claims for Non-emergency Hospital Procedures

Dr. Palian next claims that he did not incorrectly bill MaineCare for non-emergency hospital procedures coded to D9410. The MaineCare Benefits Manual states that code D9410 is for "House/Extended Care Facility Call" with the

13

additional restrictions: "[l]imited to dentist/denturist, only if medically necessary and providing a covered service under this policy." (R. 334.) The code D9420 for "Hospital Call," has the following additional limitation: "use for emergency room trauma care." (R. 334.) Dr. Palian and the Department cite to CDT codes to inform their interpretation of the MaineCare codes. The MaineCare Benefits Manual requires that "billing should be done in accordance with the CDT guidelines and Chapter II and Chapter III, Section 25." (R. 292.) Dr. Palian argues that the CDT code D9410 includes "visits to nursing homes, long-term care facilities, hospice sites, institutions, etc.," which he claims encompasses hospitals. (R. 358.)

The Hearing Officer found that the MaineCare regulations were "clear," and that the code for "Hospital Call" was expressly limited to "use for emergency room trauma care." (R. 1080.) The court agrees that Maine's regulations restrict the supplemental charge for dental services provided in a hospital setting to "emergency room trauma care," and do not allow Dr. Palian to claim a supplemental charge by claiming under D9410 that hospitals are "institutions." Because the court gives "considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures" and the billing code does not plainly compel the inclusion of non-emergency hospital procedures under D9410 or D9420, the Department's recoupment of 100% of the supplemental claims for non-emergency

14

hospital procedures was valid. *Downeast Energy Corp.*, 2000 ME 151, ¶ 13, 756 A.2d 948.

### 6. Acquisition Cost of Drugs

Lastly, Dr. Palian argues that the overpayment claims for acquisition costs of drugs is unfounded, as the Manual instructs providers to "bill their usual and customary charges for all dental services." (R. 290.) The MaineCare Benefits Manual states, however, that the MaineCare Program will pay providers the lowest of:

1. The fee established by MaineCare and noted in the "Maximum Allowance" column of the fee schedule,
2. The lowest amount allowed by Medicare; or
3. The provider's usual and customary charge.

(R. 290.) MaineCare code D9610 expressly allows payment for "Therapeutic Parenteral Drug, Single Administration," at the "acquisition cost only." (R. 334.) The Department calculated the acquisition cost of the drugs by determining the unit price of each drug on the basis of invoices from Dr. Palian's drug distributors. (R. 1173-74.) Dr. Palian suggests that the cost associated with an individual dose is impossible to determine, and should also account for the appropriate licensure or certification necessary to acquire the drugs. (Pet'r's Br. 19.) The Hearing Officer found that the Department rationally calculated the acquisition cost for each drug by using the invoice costs to determine the cost per unit. (R. 1084.) The Department sought to recoup the difference between the overpayments and the fee established

15

by MaineCare, or the acquisition cost per unit per patient, and the Hearing Officer determined that this was neither an abuse of discretion nor an error of law. (R. 1083-4.) Dr. Palian has not shown that D9610 plainly compels a contrary result, particularly given the plain language of the regulation. Therefore, the Department's recoupment claims based on the drug "acquisition cost" overpayments are upheld.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED and the Final Decision of the Commissioner is AFFIRMED.

The Clerk is directed to incorporate this Decision and Order into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: May 17, 2019

William R. Stokes
Justice, Superior Court

16