2008 ME 69

**BLETHEN MAINE NEWSPAPERS, INC.**

v.

**PORTLAND SCHOOL COMMITTEE.**

Supreme Judicial Court of Maine.

Argued: Nov. 28, 2007.
Decided: April 24, 2008.

Melissa A. Hewey, Esq., (orally,) Peter C. Felmly, Esq., Drummond Woodsum & MacMahon, Portland, for the Portland School Committee.

Jonathan S. Piper, Esq., Sigmund D. Schutz, Esq., Michael Kaplan, Esq. (orally), Preti Flaherty Beliveau, & Pachios, LLC, Portland, for Blethen Maine Newspapers, Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] The Portland School Committee appeals from a judgment of the Superior Court (Cumberland County, *Cole, J.*) concluding that portions of an executive session held by the School Committee violated the Freedom of Access Act (FOAA), 1 M.R.S. §§ 401–412 (2007), and that certain notes taken during that session, and a document prepared for that session, are "public records" and therefore subject to public inspection. The School Committee

contends that the Superior Court erred because the executive session was lawfully conducted pursuant to the FOAA, and that the court improperly ordered the release of those notes and that document. We agree with the contentions of the School Committee, and we vacate the judgment.

## I. BACKGROUND

[¶ 2] On July 25, 2007, amidst controversy over a substantial school financial deficit, and after consulting with its attorney as to the legitimate purposes for which an executive session could be held, the School Committee voted to go into executive session, and met in executive session for about forty-five minutes. The agenda for the executive session was to "consult with counsel and consider the duties of central office staff with respect to the department's financial management." During the session, members of the Committee questioned the superintendent, the finance manager, and the human resources director, as well as their attorney.

[¶ 3] No recording was made of the executive session, and therefore no transcript of the proceedings is available. Attorney Harry R. Pringle, general counsel for the School Committee, advised the Committee during the process and participated in the executive session, taking approximately three pages of notes during the discussions. Two Committee members, Ellen Alcorn and Lori Gramlich, also took limited notes. The superintendent, Mary Jo O'Connor, presented her management philosophy, in a typewritten memorandum which had been prepared exclusively for the executive session.

[¶ 4] On July 26, 2007, Blethen Maine Newspapers, Inc. requested "all notes, transcripts, recordings, minutes or other documents reflecting the discussion during the meeting as well as any documents distributed to or by Committee members or Department staff during the meeting," pursuant to the FOAA. 1 M.R.S. § 408(1). On July 31, 2007, the School Committee, acting through its attorney, denied Blethen's FOAA request to examine the documents. On that same day, after receiving the denial, Blethen filed a complaint against the School Committee seeking preliminary and permanent injunctive relief from what it asserted was an unlawful denial of access to public proceedings and public records in violation of the FOAA.

[¶ 5] On August 17, 2007, the Superior Court held a hearing, at which Attorney Pringle, Superintendent Mary Jo O'Connor, and School Committee member Benjamin Meiklejohn all testified about what occurred before and during the executive session. Attorney Pringle testified that prior to the executive session, and when School Committee members arrived at the session, he advised the Committee members of the purposes and limitations of the executive session set out in the FOAA. Attorney Pringle testified that he understood the purpose of the executive session was to review the duties of the staff of the School Department, and to discuss legal questions that could arise. Attorney Pringle further testified that there was a high probability that harm to the reputation of some of the senior staff could result from the session; that he was present to help the School Committee chair stay within the bounds of the purpose of the executive session, and to answer legal questions that the Committee members had; that once or twice when Committee members began to talk about something that was inconsistent with the purpose of the executive session, namely how the Finance Committee might better operate, he or the chair called attention to the inappropriateness of that subject matter; that the purpose of the session was not to discuss the budget but was limited to personnel areas and consul-

tation with counsel; that most of the discussion pertained to the staff and their roles in managing the finances of the School Department, and how well those responsibilities had been carried out; that there were questions as to what legal options the School Committee had concerning the employment of the School Department employees; and that there was no discussion of a solution to the financial shortfall, or of possible budget reductions or the need to recoup expenditures. Attorney Pringle testified that he took notes to remember what was said and done in the executive session, for possible use later in open session of the School Committee, and in preparation for litigation.

[¶ 6] Superintendent O'Connor testified that the purpose of the executive session was to clarify the rules and responsibilities of the staff in regard to fiscal management of the Portland School Department. She discussed her role as superintendent by reviewing a document she prepared in advance for purposes of the meeting, and testified that most of the meeting consisted of very direct questions to the staff about the roles they played during the development of the budget and the fiscal shortfall.

[¶ 7] Committee member Benjamin Meiklejohn also testified. He had spent nearly six years on the School Committee and was the chair of the Finance Committee. He was not present when the School Committee voted to go into executive session, but did join the session later. He understood the purpose of the executive session was to consult with legal counsel and to discuss the duties of the staff. He testified that he asked questions as to how to correct the problem of the fiscal shortfall, but was cut off by Attorney Pringle. Meiklejohn testified that, as an individual School Committee member, he had always been reluctant to go into executive session, and that during his presence at the executive session there was no discussion of budget proposals, the status of the budget, or how to make up the fiscal shortfall.

[¶ 8] Two days after the executive session, Meiklejohn posted to his website that a reasonable expectation of damage to the reputation of the senior staff of the school department "most certainly did exist" going into the executive session, but that after the session, he no longer felt that expectation. *See* 1 M.R.S. § 405(6)(A)(1). The Superior Court relied on Meiklejohn's website posting to shift the burden from Blethen, to show that there had been a violation of FOAA, to the School Committee, to demonstrate its compliance with the executive session exception to the open meeting requirement of FOAA. *See Chase v. Town of Machiasport,* 1998 ME 260, ¶ 9, 721 A.2d 636, 639 (the party alleging a violation of the Act has the burden of producing probative evidence sufficient to support a finding that the Act has been violated); *see also Underwood v. City of Presque Isle,* 1998 ME 166, ¶¶ 18–19, 715 A.2d 148, 154 (discussing shifting the burden of proof from the party alleging the violation of the FOAA to the public body).

[¶ 9] Although the court acknowledged that some of the deliberations in the executive session dealt with personnel issues, a subject permissible for discussion in executive session, it found that some of the deliberations were about the School Committee budget and were impermissible under the FOAA. The court found that the Superintendent's statement about her management philosophy was a public record under the FOAA, and that the personal notes of the two Committee members, as the only notes from the executive session, were public records pursuant to the FOAA, and ordered their disclosure. The court also determined that certain portions of the notes taken by Attorney Pringle

were privileged and not subject to public disclosure, but that other parts of the attorney's notes were public records and were subject to public disclosure, with the privileged portions of those notes redacted.

[¶ 10]  The School Committee filed this appeal.

## II.  DISCUSSION

■ [¶ 11]  The FOAA reveals a clearly expressed legislative intent that public proceedings be conducted openly, and that records of public proceedings be open to public inspection.

[¶ 12]  Title 1 M.R.S. § 401 provides:

The Legislature finds and declares that public proceedings exist to aid in the conduct of the people's business. It is the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly. It is further the intent of the Legislature that clandestine meetings, conferences or meetings held on private property without proper notice and ample opportunity for attendance by the public not be used to defeat the purposes of this subchapter.

[¶ 13]  The FOAA, however, does allow for executive sessions to be conducted by public bodies pursuant to 1 M.R.S. § 405(6). That section provides:

Deliberations may be conducted in executive sessions on the following matters and no others: (A) Discussion or consideration of the employment, ... assignment, duties, promotion, demotion, ... evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions: (1) An execu-

tive session may be held only if public discussion could be reasonably expected to cause damage to the reputation or the individual's right to privacy would be violated.

1 M.R.S. § 405(6)(A)(1).  Section 405(6)(A) also provides, "This paragraph does not apply to discussion of a budget or budget proposal."

[¶ 14]  The School Committee contends that the Superior Court committed clear error when it found that portions of the executive session involved a discussion of the budget and therefore, violated section 405(6)(A) of the FOAA. We agree. Although the evidence supports a finding that there were some questions raised regarding what the School Committee as a whole and in particular the Finance Committee could do to address the financial shortfall—a subject not appropriate for an executive session—those questions were few, and of short duration, and, at the direction of Attorney Pringle, were not answered.

[¶ 15]  The overwhelming evidence, including the notes taken by those present, demonstrates that the overall purpose of the executive session was in compliance with section 405(6). All of the witnesses testified that a main purpose of the session was to inquire into the duties and responsibilities of the senior staff of the School Committee, and that the focus of the meeting complied with that purpose. The notes taken at the meeting corroborate that testimony. Moreover, because there was inquiry into the duties and responsibilities of staff personnel who have fiscal management responsibilities, in the face of an unexpected $2.5 million financial shortfall that was not promptly brought to the attention of the School Committee and the public, a public discussion "could be reasonably expected to cause damage to the reputation[s]" of those who would come

under scrutiny. 1 M.R.S. § 405(6)(A)(1). Although the website of School Committee member Meiklejohn revealed his opinion that, as measured *after* the executive session, the reputations of the senior staff were not in danger, the time for that reasonable expectation to be measured is before the executive session is conducted, and not after its completion. Meiklejohn did agree that there was a reasonable expectation of damage to reputations of the senior staff people going into the executive session. Moreover, because the School Committee was faced with a recently disclosed and highly publicized $2.5 million financial shortfall that had only recently been disclosed to the School Committee and to the public, the evidence, including the notes, reveal that much of the meeting was taken up with questions addressed to the employees, questions that were pointed and potentially damaging to the reputations of the employees present.

[¶ 16] The Superior Court, however, concluded that parts of the executive session violated the provisions of the FOAA. The court found that "some of the deliberations were regarding the school committee budget." That finding is based on the language in section 405(6)(A) that provides that "[t]his paragraph [dealing with subject matters allowable in executive session] does not apply to discussion of a budget or budget proposal," and is consistent with Blethen's argument to the Superior Court, and on appeal, that the "discussions of the budget" language should be construed to mean that *any* discussion of matters dealing with finances is prohibited in an executive session. We disagree with that construction. Although the FOAA is to be interpreted liberally to favor open meetings, 1 M.R.S. § 401; *Moffett v. City of Portland,* 400 A.2d 340, 347–48 (Me.1979), construing the language of section 405(6)(A) as prohibiting *any* discussion of matters dealing with school finances in an executive session would lead to the absurd result that there never could be a discussion in executive session about personnel whose responsibilities are fiscal or monetary, or whose jobs impact a budget in any way, even when such discussion could reasonably be expected to cause damage to the reputation or violate the privacy of the individual involved.[1] We reject such an expansive interpretation of section 405(6)(A.) that ignores the policy clearly expressed in FOAA protecting against damage to reputation and violation of privacy rights of government employees. Such a construction would deny the protection given by the statute to employees who have fiscal or monetary responsibilities. Discussing the performance of such employees, and why the shortfall was allowed to happen, and why it was not brought to the attention of the School Committee, which is what the evidence discloses what was talked about in the executive session, does not amount to discussions of the budget or budget deliberations within the meaning of section 405(6)(A).

[¶ 17] No witness testified that there was any discussion of the school budget in the executive session conducted by the School Committee. Before going into executive session, the School Committee was instructed on the FOAA and that discussion of the budget was not allowed, and that the purposes of the session were to allow the School Committee to inquire into and be informed about the duties and job responsibilities of the senior staff of the School Department, and get answers to

---

1. The Superior Court improperly concluded that the times during the executive sessions, reflected in the notes of Attorney Pringle, referring to questions asked of the employees about fiscal matters, amounted to budget discussions prohibited by 1 M.R.S. § 405(6)(A) (2007).

legal questions. The notes taken during the session corroborate the testimony that neither the budget nor budget policy was discussed. Although there were a few questions by School Committee members inquiring as to the steps to be taken to correct the deficit problem, the evidence shows that Attorney Pringle made clear that such subjects were not appropriate, and the discussion was redirected to the permissible topics of the executive session, i.e., the duties of the senior staff in relation to the $2.5 million shortfall, how it came about, and why it did not come to light.

[¶ 18] Because the executive session was lawful, documents prepared for use during the executive session and notes made during the executive session are not subject to public examination. Neither the definition of "public records" nor the exception for executive sessions address the treatment of documents prepared for or notes taken in connection with a legal executive sessions. Nonetheless, because the public was legitimately excluded from the executive session, the memo prepared for and notes taken during such session are not public records and are not open to public inspection.[2] To hold otherwise would produce an absurd and illogical result. *See Cyr v. Madawaska Sch. Dep't,* 2007 ME 28, ¶ 9, 916 A.2d 967, 970 (stating that if the statute's meaning is clear, the Court does not look beyond its words, unless the result is illogical or absurd).

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment in favor of the Portland School Committee.

---

2. Had the memorandum outlining the management style of the Superintendent not been produced exclusively for the executive session, its contents would clearly not be protected information.