MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:      2016 ME 13
Docket:        BCD-15-94
Argued:        September 17, 2015
Decided:       January 14, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

# HUGHES BROS., INC.

v.

# TOWN OF EDDINGTON

SAUFLEY, C.J.

[¶1]  In this appeal involving Maine's open government laws, we consider the sometimes competing statutory goals that (1) provide for government meetings to be open to the public, *see* 1 M.R.S. § 401 (2015), and (2) guard the authority of government officials to receive legal advice in executive session to enable them to perform their duties in accordance with the law, *see* 1 M.R.S. § 405(6)(E) (2015). Hughes Bros., Inc., appeals from a judgment entered in the Business and Consumer Docket (*Murphy, J.*) on its complaint seeking declaratory and injunctive relief.[1]  Hughes argues, among other contentions, that the court erred in

---

[1]  Although the Town of Eddington filed a cross-appeal, it did not do so until thirty days after the court entered its final judgment disposing of a post-judgment motion, and sixteen days after Hughes filed its notice of appeal.  Because the Town did not file its cross-appeal within twenty-one days after the entry of judgment or within fourteen days after Hughes filed its notice of appeal, as required by M.R. App. P. 2(b)(3), we dismiss the cross-appeal and do not discuss it further.  *See Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶ 8, 820 A.2d 582.

determining that the Town of Eddington Planning Board and Board of Selectmen conducted a valid executive session, invoked for the purpose of consulting with counsel. We affirm the court's judgment in all respects, and we write primarily to address the legality of the executive session.

## I. BACKGROUND

[¶2] The parties stipulated to a timeline of the events in the municipal proceedings, with attached documentation, and the court adopted those stipulations as having been found by a preponderance of the evidence. We draw the historical facts from those stipulations and documents, and we derive the procedural history from the trial court record.

A.     Application to the Planning Board and Discussion of a Moratorium

[¶3] In August 2013, the Town of Eddington's Planning Board approved a landowner's application for a permit to create a one- to five-acre quarry, to be accessed by a private way, on property in Eddington that Hughes was under contract to purchase. Shortly thereafter, in September 2013, Hughes filed a new application seeking permission to use the property as a larger, twenty-acre quarry. A public hearing was held on the application for the twenty-acre quarry in October 2013, and the Planning Board voted to deny the application because the private way did not provide an appropriate access way for the proposed larger quarry. At

the same meeting, the Planning Board voted to recommend a moratorium on quarries to the Town's Board of Selectmen.

[¶4]  On November 14, 2013, Hughes submitted a new application that proposed a separate access road directly from Route 9.  Five days later, members of the Planning Board attended a public meeting of the Board of Selectmen and presented the recommendation for a moratorium on quarries.  The Board of Selectmen voted to deny the request for a moratorium.

[¶5]  In December 2013, the Board of Selectmen held a public meeting at which a member of the public urged the Selectmen to reconsider placing a moratorium on quarries as proposed by the Planning Board.  Also in late 2013, Hughes submitted its first information request to the Town, seeking correspondence along with meeting agendas and minutes pursuant to the Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414 (2015).[2]

B.    Executive Session of Planning Board and Board of Selectmen

[¶6]  On January 29, 2014, the Planning Board and the Board of Selectmen met together in a publicly announced meeting and went into executive session. The Planning Board minutes from that day indicate that the Planning Board meeting was called to order and that the Planning Board, with six members

---

[2]  Although the Freedom of Access Act has been amended recently, *see e.g.*, P.L. 2015, ch. 335, § 1 (effective July 12, 2015) (codified at 1 M.R.S. § 402(3)(Q) (2015)), none of the recent amendments affects the issues raised in this appeal, and we cite to the current codification.

4

present, unanimously voted to go into executive session for "Consultation with Legal Counsel," citing to the FOAA. *See* 1 M.R.S. § 405(6)(E). The two members of the Board of Selectmen then present were authorized to observe the executive session.

[¶7] The minutes of the Board of Selectmen indicate that their meeting was called to order a few minutes after the Planning Board had begun its meeting and that the Board of Selectmen voted three to zero to go into executive session. The Board of Selectmen also stated that the executive session was being held for "Consultation with Legal Counsel" and cited to the FOAA. A fourth member of the Board of Selectmen joined the meeting in executive session.

[¶8] The jointly held executive session lasted for approximately an hour and twenty minutes. At around the time of the executive session, drafts of a proposed ordinance that would establish a moratorium on quarries were prepared.

C.    Town and Court Proceedings After the Executive Session

[¶9] About a month after the executive session, in late February 2014, the Planning Board, at a public meeting, deliberated and voted to send a moratorium ordinance to the Board of Selectmen for its review. At the following public meeting of the Board of Selectmen, held on March 4, 2014, the Board of Selectmen scheduled an April 1, 2014, public hearing on the moratorium proposal

and voted to place an article on a town warrant announcing that the moratorium would be considered at a special town meeting to be held on April 8, 2014.

[¶10]  Hughes submitted a second FOAA document request in early March. In a letter to Hughes's attorney, the Town objected to the new request and asserted FOAA exceptions.  Meanwhile, the Planning Board continued to review the Hughes application, and Hughes agreed to extend the application review period until April 3, 2014.

[¶11]  On April 1, 2014, Hughes filed a three-count complaint in the Superior Court seeking declaratory and injunctive relief.  Count I sought an injunction directing the Town to cease and desist from holding a public vote on the moratorium, and a declaration that any moratorium that might be approved was null, void, and of no legal effect because the Town violated the open meeting requirements imposed by the FOAA during the January 2014 executive session. Count II sought the same relief based on the Town's violation of town meeting, election, and moratorium statutes set forth in title 30-A of the Maine Revised Statutes.  Count III sought the disclosure of certain Town documents and public records pursuant to the FOAA.

[¶12]  Also on April 1, 2014, the Board of Selectmen held its scheduled public hearing on the proposed moratorium ordinance.  The Board of Selectmen then held the special town meeting, as scheduled, on April 8, 2014.  By a vote of

6

220 to 84, the Town adopted an ordinance that imposed a moratorium on mineral extraction activities, including quarrying activities. The Planning Board thereafter voted to take no further action on the Hughes application until the moratorium expired, the application was withdrawn, or a court ordered otherwise.

[¶13] In the Superior Court, Hughes moved to expedite judicial review and successfully applied for transfer of the case to the Business and Consumer Docket. The court appropriately gave priority to count III and ultimately entered orders requiring the Town to disclose specified documents. The parties thereafter produced the jointly stipulated timeline with accompanying exhibits for the court's consideration of counts I and II of the complaint.

[¶14] On January 7, 2015, the court, after considering the parties' written arguments, entered a judgment for the Town on counts I and II of the complaint. Relevant here, the court determined that the executive session had complied with the FOAA because the motion for executive session was legally sufficient, the vote to go into executive session was not flawed,[3] nothing in the law prevents a joint executive session, the open meeting requirement was not violated by holding an

---

[3] Although Hughes argues that the Board of Selectmen's vote to go into executive session was not "called . . . by a public, recorded vote of 3/5 of the members, present and voting," 1 M.R.S. § 405(3) (2015), the record shows that three present and voting members voted unanimously to go into executive session a few minutes after the Planning Board entered into executive session.

executive session to consult with counsel, and the moratorium was not approved in executive session.

[¶15]   Hughes moved for additional findings and to alter or amend the judgment pursuant to M.R. Civ. P. 52[4] and 59.   On February 9, 2015, the court denied the motion.   Hughes appealed to us.   *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2.[5]

[¶16]   Hughes's requests for injunctive relief to prevent the vote on the moratorium are now moot.   *See Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 6, 802 A.2d 994 (stating that an issue is moot if "the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy although the case raised a justiciable controversy at the time the complaint was filed" (quotation marks omitted)).   Count III was resolved by the trial court and is not at issue on appeal.   Hughes appeals from portions of the court's judgment on counts I and II, arguing that the moratorium and resulting mineral extraction ordinance should be declared null and void.[6]

---

[4]   Rule 52 was recently amended but not in any way that affects this appeal.   *See* 2015 Me. Rules 15 (amending M.R. Civ. P. 52 effective Sept. 1, 2015).

[5]   After Hughes filed its notice of appeal, the Town amended its Zoning Ordinance with respect to mineral extraction operations.   *See* Eddington, Me., Zoning Ordinance ch. 20 (Apr. 2, 2015).

[6]   Although Hughes raises other issues regarding the application of the moratorium statutes and the Town's Zoning Ordinance, *see* 30-A M.R.S. §§ 4301(11), 4356 (2015); Eddington, Me., Zoning Ordinance §§ 402, 801-09 (Mar. 20, 2012), and its pursuit of vested rights, we do not find those arguments persuasive and do not discuss them further.

## II.  DISCUSSION

[¶17]  Hughes argues that the joint executive session of the Planning Board and Board of Selectmen violated the open meeting requirements of the FOAA and, therefore, that the moratorium ultimately approved in the open Town vote was void.  Specifically, Hughes contends that (1) the described purpose of the executive session was inadequate, and the session itself was not limited to the stated purpose; and (2) the FOAA does not allow for a joint executive session of two municipal boards.  We begin by summarizing the requirements of the FOAA, after which we consider Hughes's arguments concerning the legality of the executive session.

### A.  Executive Sessions and the FOAA

[¶18]  "Except as otherwise provided by statute or by section 405, all public proceedings must be open to the public and any person must be permitted to attend a public proceeding."  1 M.R.S. § 403(1).  The Legislature has stated that the broad purpose of the FOAA is to ensure that government entities' "actions be taken openly."  *Id.* § 401; *see Dow v. Caribou Chamber of Commerce & Indus.*, 2005 ME 113, ¶ 9, 884 A.2d 667 ("The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public." (quotation marks omitted)).  Because the FOAA "shall be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of

legislative intent," 1 M.R.S. § 401, we strictly interpret any statutory exceptions to the FOAA. *Med. Mut. Ins. Co. of Me. v. Bureau of Ins.*, 2005 ME 12, ¶ 5, 866 A.2d 117.

[¶19]   Pertinent here, an exception to the requirement of open public meetings is made for executive sessions that comply with specified conditions. *See* 1 M.R.S. § 405.   An executive session may only be held for a purpose that is enumerated in section 405 of the FOAA, *id.* § 405(6), such as for "[c]onsultations between a body or agency and its attorney concerning the legal rights and duties of the body or agency." *Id.* § 405(6)(E).  "A motion to go into executive session must indicate the precise nature of the business of the executive session," *id.* § 405(4), and "[m]atters other than those identified in the motion to go into executive session may not be considered in that particular executive session," *id.* § 405(5).  "An ordinance, order, rule, resolution, regulation, contract, appointment or other official action may not be finally approved at an executive session." *Id.* § 405(2).

[¶20]  "[A] public body charged with violating the terms of the [FOAA] during an executive session has the burden of proving that its actions during the executive session complied with an exception to" the open meeting requirement of the FOAA. *Underwood v. City of Presque Isle*, 1998 ME 166, ¶ 19, 715 A.2d 148. If the administrative record demonstrates that the body or agency used the executive session for the stated, authorized purpose, the use of the executive

session will be upheld.  *Cf. Blethen Me. Newspapers, Inc. v. Portland Sch. Comm.,* 2008 ME 69, ¶¶ 15-18, 947 A.2d 479 (vacating a judgment of the Superior Court that ordered the disclosure of documents prepared for and created during an executive session when the administrative record demonstrated that the executive session was held for a permitted purpose and adhered to that purpose).

[¶21]  In reviewing whether a government entity complied with the FOAA, we review factual findings for clear error, *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 22, 769 A.2d 857, but review the trial court's interpretation of the FOAA de novo, *Cyr v. Madawaska Sch. Dep't*, 2007 ME 28, ¶ 9, 916 A.2d 967.  "When interpreting a statute, we accord its words their plain meaning."  *Cyr*, 2007 ME 28, ¶ 9, 916 A.2d 967.  If the meaning is clear, we will not look beyond the words of the statute, unless the result would be illogical or absurd.  *Id.*

B.    Legality of the Executive Session

1.    Purpose and Scope of the Executive Session

[¶22]  Each of the municipal entities—the Planning Board and the Board of Selectmen—went into executive session for the stated purpose of "Consultation with Legal Counsel."  The session was additionally described by the Planning Board as being sought for the purpose of having counsel "meet with the Planning Board in Executive Session to expand on the basis for his wording in the proposed

Moratorium Ordinance." The Planning Board's chair also stated after the executive session that the Town's attorney had given them advice in executive session "to help them decide on how to proceed with wording of such moratorium ordinance." The question for us is whether the court properly found and concluded that the consultation with counsel in executive session "concern[ed] the legal rights and duties" of the Planning Board and the Board of Selectmen. 1 M.R.S. § 405(6)(E).

[¶23] The evidence presented regarding the purpose of the executive session supports the court's determination that the Town met its burden to show that the executive session was held for—and limited to—the authorized purpose of consulting with counsel to draft a legally sound ordinance amendment for proposal at a later public meeting. *See id.* § 405(4), (5), (6)(E); *see also Blethen Me. Newspapers, Inc.*, 2008 ME 69, ¶¶ 15-18, 947 A.2d 479; *cf. Town of Burlington*, 2001 ME 59, ¶ 22, 769 A.2d 857. The Town did not "finally approve[]" any ordinance or rule in executive session. 1 M.R.S. § 405(2). Rather, *after* consulting with counsel during the executive session, the Planning Board publicly deliberated and voted to present a proposed moratorium to the Board of Selectmen. The Board of Selectmen then held a public hearing before submitting the proposed moratorium to the vote of the Town's residents at a special town meeting. It was not until the majority vote of the residents at the town meeting that the moratorium

was actually adopted. *See Vella v. Town of Camden*, 677 A.2d 1051, 1055 (Me. 1996).

[¶24] Although Hughes argues that any meeting related to legislative drafting should be open to the public, the FOAA was not designed to prevent a government body or agency from consulting privately with legal counsel about how to comply with the laws and regulations that govern the body's or agency's work. *See* 1 M.R.S. § 405(6)(E). Indeed, it may be wise for a citizen board to consult with knowledgeable counsel regarding the board's legal obligations—and the potential legal consequences of its actions—when preparing to conduct important municipal business.

[¶25] To ensure that an executive session is strictly limited to purposes allowed by the FOAA, an executive session must be publicly announced; its purpose must be described clearly; it must be confined to statutorily authorized matters and must not expand into matters requiring public deliberation; it may not include any final approval of any official action; and records must be kept that are adequate for purposes of meaningful judicial review if statutory compliance is challenged. *See* 1 M.R.S. §§ 403, 405(2)-(6), 406. All of these elements were present here. The trial court did not err in determining that each Board's consultation with legal counsel in executive session complied with the conditions specified in the FOAA. *See id.* § 405(2)-(5), (6)(E).

2. Joint Executive Session

[¶26] The FOAA contains no prohibition against municipal boards simultaneously entering into executive session to jointly consult with counsel about how to comply with the law in carrying out their respective duties. *See id.* § 405(6)(E). The court did not err in determining that each board took the steps necessary to enter into executive session. *See id.* § 405(3), (4), (5), (6)(E); *Blethen Me. Newspapers, Inc.*, 2008 ME 69, ¶¶ 15-18, 947 A.2d 479. Although government actors must take care to prevent an executive session from illegally expanding into public matters that may be addressed only in an open public meeting, *see* 1 M.R.S. § 405(2), (4)-(6), the bare fact that boards share in the advice of counsel during a combined executive session does not offend the FOAA and demonstrates prudent fiscal management.

[¶27] Accordingly, we affirm the judgment.

The entry is:

> Town's cross-appeal dismissed. Judgment
> affirmed.

**On the briefs:**

William B. Devoe, Esq., and Jonathan A. Pottle, Esq., Eaton Peabody, Bangor, for appellant Hughes Bros., Inc.

Charles E. Gilbert, III, Esq., Gilbert & Greif, P.A., Bangor, for appellee Town of Eddington

**At oral argument:**

William B. Devoe, Esq., for appellant Hughes Bros., Inc.

Charles E. Gilbert, III, Esq., for appellee Town of Eddington

Business and Consumer Docket docket number CV-2014-35
FOR CLERK REFERENCE ONLY