STATE OF MAINE                                 SUPERIOR COURT
CUMBERLAND, ss.                            BUSINESS AND CONSUMER COURT
                                             LOCATION: PORTLAND
                                             DOCKET NO. BCD-RE-17-13 ✓

|  |  |  |
|---|---|---|
| REBECCA L. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER ON DEFENDANT EDWARD |
| | ) | M. GRAFFAM'S MOTION FOR |
| EDWARD M. GRAFFAM, III, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant, | ) | |
| | ) | |

Defendant Edward Graffam III ("Graffam") moves for summary judgment in his favor on Count I, Count III, Count IV, and Count VI of Plaintiff Rebecca Brown's ("Brown") Complaint. Brown opposes Graffam's motion for summary judgment. Pursuant to its discretionary authority, the Court chose to rule on the motion without hearing. M.R. Civ. P. 7(b)(7).

**PROCEDURAL POSTURE**

Brown filed her Complaint against Graffam and Leni Gronros and naming several parties-in-interest on August 28, 2017, alleging breach of fiduciary duty (Count II), conversion (Count III), unjust enrichment (Count IV), and misrepresentation (Count VI) against Graffam. (Pl's Compl. ¶¶ 41-76.) Brown's Complaint also requested the equitable remedy of an imposition of a constructive trust over the proceeds of the transaction at issue in this case (Count I), which proceeds were alleged to be held by certain parties-in-interest. (Pl's Compl. ¶¶ 34-40.) On February 6, 2018, this Court entered an order granting Defendant Leni Gronros's and the parties'-in-interest motion to dismiss. Graffam, the sole remaining defendant, filed the instant motion for summary judgment on February 21, 2018. Brown opposed the motion and Graffam timely replied.

1

## FACTUAL BACKGROUND

Brown and Graffam are the sole members of EMG4, LLC, which owned Tolman Pond Market. (Supp'g S.M.F. ¶¶1-2.) Brown held 19% of the membership interest in EMG4 and Graffam held the remaining 81% interest. (Supp'g S.M.F. ¶ 3.) Brown and Graffam married in 2004 and divorced in 2014. (Opp. S.M.F. ¶¶ 1, 9.) EMG4 was governed by an Operating Agreement that was signed by both parties. (Supp'g S.M.F. ¶¶ 4- 5; Opp. S.M.F. ¶¶ 5-6.) The Operating Agreement was attached to Brown's Complaint and both parties agree to its authenticity. (*Id.*)

Brown and Graffam agreed to sell EMG4 together with "Penobscot Bay Ice Company," which was owned by Graffam's family, to "Maritime Energy" as a package deal for the total price of $2,300,000. (Supp'g S.M.F. ¶¶ 7, 9; Opp. S.M.F. ¶ 10.) The parties dispute whether and to what extent Brown and Graffam agreed to the terms of the sale. Brown claims that she and Graffam unanimously agreed that the valuation of the company for purpose of the sale to Maritime Energy would be $1,200,000. (Opp. S.M.F. ¶ 11.) Graffam claims that there was no such agreement, but that Brown in fact executed a Unanimous Consent of Shareholders ("Consent form") granting him sweeping powers to complete the transaction, and was aware at the time that the sale price for EMG4 was $800,000. (Supp'g S.M.F. ¶¶ 8-9, 13.) Brown does not dispute that she signed the Consent form but claims that she did so on the day of closing under the false impression that her signature was required for the deal to close that day, and not to allow Graffam to materially change the asset allocation. (Opp. S.M.F. ¶¶ 12-14.) Brown further claims that Graffam and the parties-in-interest (who have been dismissed by prior order of the Court) refused to allow her to attend the closing. (Opp. S.M.F. ¶ 15.)

2

The package deal closed, and the amount of the purchase price allocated to EMG4 was $800,000. (Supp'g S.M.F. ¶¶ 9, 13; Opp. S.M.F. ¶ 16.) Graffam claims that he decided on this allocation based on his best judgment, that the decision was not motivated by fraud or bad faith, and that he believes that this was a good deal because $800,000 was much more than he could get for EMG4 on its own and that "Penobscot Bay Ice Company" was the more valuable and profitable of the two companies. (Supp'g S.M.F. ¶¶ 8-11.) This is disputed by Brown, who claims that EMG4 was the more valuable of the two companies, that the $800,000 figure was calculated to be equal to EMG4's liabilities such that there would be no profit on the sale, and that Graffam changed the allocation to the benefit of "Penobscot Bay Ice Company" in order to secure a windfall for his family (the owners of "Penobscot Bay Ice Company") who have since been surreptitiously paying him to make up the difference of what he would have received for the sale of EMG4 under the previous allocation. (Opp. S.M.F. ¶¶ 10-11, 19-21, 23.) It is undisputed that because $800,000 was equal to EMG4's liabilities, neither Brown nor Graffam received any direct profits as a result of the sale. (Supp'g S.M.F. ¶ 14; Opp. S.M.F. ¶ 19.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party when "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one capable of affecting the outcome of the litigation. *Savell v. Duddy*, 2016 ME 139, ¶ 19, 147 A.3d 1179. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *M.P. Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "A party seeking to avoid summary judgment must adduce prima facie evidence as to each element of a claim or defense that the party asserts." *Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179.

3

## DISCUSSION

### I.   THE OPERATING AGREEMENT DOES NOT PROHIBIT BROWN'S CLAIMS

Graffam argues that Paragraph 12 of the Operating Agreement (Ex. A to Pl's Compl.; Supp'g S.M.F. ¶ 4) releases Graffam from any liability for actions taken in his capacity as a member of EMG4. Paragraph 12 states:

> The Members shall not be liable, responsible or accountable in damages or otherwise to the Company or to any other Member for any act or omission performed or omitted by it in good faith pursuant to the authority granted to the Members by this Agreement, but shall be liable only for fraud, bad faith or gross negligence.

Graffam argues that "[n]one of the Counts of [Brown's] Complaint are based on fraud, bad faith or gross negligence . . . accordingly, her Complaint is barred by the operating agreement which she signed." (Mot. S. J. 3.) On the contrary, Brown's Complaint explicitly alleges Graffam breached his duty of good faith as the grounds for Graffam's liability in Count II (Pl's Compl. ¶ 45). Furthermore, a fact-finder could properly accept Brown's version of the truth and determine that Graffam changed the asset allocation in the manner described in the Complaint and in Graffam's Affidavit. (*See* Opp. S.M.F. ¶¶ 12-18.) A fact finder could further determine that Graffam undertook this action in bad faith. *See Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993) (jury finding of bad faith upheld on appeal where insurance company's investigator failed to question all witnesses).

Furthermore, the Operating Agreement explicitly imposes on its members a duty to "exercise their powers and discharge their duties in good faith with a view to the interest of the Limited Liability Company *and its Members* and with the degree of diligence, care and skill that ordinarily prudent persons would exercise under similar circumstances in like positions." (Ex. A to Pl's Compl. ¶ 14 (emphasis added).) A jury could likewise determine that Graffam breached

4

this provision of the Operating Agreement on the evidence before the Court.

In sum, the Operating Agreement offers Graffam no shelter. On the evidence before the Court on this motion a factfinder could readily find that Graffam breached his duties under the Operating Agreement and acted in bad faith. Under this version of the truth, Graffam is not protected by ¶ 12 of the Operating Agreement.

## II.     BROWN DID NOT CONSENT TO THE TRANSACTION

Graffam next argues that because Brown signed the Consent form, and was aware at the time that EMG4's allocation of the sales proceeds would be $800,000, that she consented to any actions Graffam undertook to consummate the transaction for the sale of EMG4. (Mot. S.J. 4.) Brown disputes that she knew of the $800,000 price allocation when she signed the Consent form and claims that she never would have signed the Consent form if she knew it was to be used in order to lower what she understood the price allocation to be. (Opp. S.M.F. ¶¶ 11-14, 17-18.)

"Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." *Me. Dep't of Human Servs. v. Pelletier*, 2009 ME 11, ¶ 16, 964 A.2d 630 (quoting *Me. Dep't of Human Servs. v. Bell*, 1998 ME 123, ¶ 6, 711 A.2d 1292).

The circumstances surrounding Brown's alleged "waiver and consent" present the Court with two competing versions of the truth. The Consent form purports to "authorize[] [Graffam] to execute all documents necessary and perform all such act [*sic*] deemed necessary including, but not limited to the execution of deeds, bills of sale, tax forms, and such other documents as may be required by [the purchaser]" and "ratif[y] and approve[]" "any and all acts authorized pursuant to" the Consent form. (Ex. G to Pl's Compl.; Supp'g S.M.F. ¶ 23.) While the Consent form thus grants

5

Graffam sweeping powers to effect the transaction for the sale of EMG4, it says nothing explicit about giving him authority to alter the terms of the sale. Under Brown's version of the story, she was induced to sign the Consent form based on his representation that it was essential to the closing of the deal. (Opp. S.M.F. ¶¶ 12-13.) If her version is true, the Consent form is insufficient evidence of her consent to Graffam's subsequent reduction in the asset allocation. *See Pelletier*, 2009 ME 11, ¶ 16, 964 A.2d 630. *Cf. Estate of Barrows*, 2008 ME 62, ¶ 8, 945 A.2d 1217 (holding waiver was valid when it expressly acknowledged that petitioner was waiving the right to be informed of her spousal rights to decedent's estate and to consult an attorney for that purpose). Thus, summary judgment cannot be granted based solely on the Consent form and Graffam's statements by affidavit regarding what Brown understood at the time she signed it.

III. <u>BROWN HAS REBUTTED THE PRESUMPTION THAT THE BUSINESS JUDGMENT RULE APPLIES</u>

Graffam argues that because he exercised his best judgment when making decisions about the sale of EMG4, and his actions were not motivated by fraud or bad faith, his decisions are protected by the business judgment rule and he is therefore entitled to summary judgment on Count II (breach of fiduciary duty). (Mot. S.J. 5.) *See Rosenthal v. Rosenthal*, 543 A.2d 348, 353-54 (Me. 1988). Brown argues that she has sufficiently rebutted the presumption that Graffam exercised his business judgment because she has introduced facts that the bad faith exception to the business judgment rule applies. (Opp. Mot. S.J. 5).

"[I]t falls outside the proper judicial domain to inquire into and second-guess the prudence of particular business decisions honestly reached by those entrusted with the authority to determine what course of action best advances the well-being of the enterprise." *Rosenthal*, 543 A.2d at 353. "The business judgment rule does not, however, protect business decisions that result from fraud or bad faith." *Id.* "Thus the business judgment rule will insulate from a finding of liability the

6

informed business decisions made by [a defendant] unless [the plaintiff] is able to show that [the defendant's] allegedly harmful conduct was primarily motivated by fraud or bad faith." *Id.*

Graffam urges the Court to reject Brown's showing (by way of affidavit) that Graffam's decision-making was primarily motivated by bad faith by attacking Brown's credibility. (Reply Mot. S.J. 5.) The Court is foreclosed from making a credibility determination on a motion for summary judgment; indeed, the Court must view the evidence in a light more favorable to Brown. *Johnson v. McNeil*, 2002 ME 99, ¶ 17, 800 A.2d 702. Brown's version of the truth "make[s] a showing from which a factfinder might infer that *impermissible motives predominated* in the making of the decision in question." *Rosenthal*, 543 A.2d at 354 (quoting *Johnson v. Trueblood*, 629 F.2d 287, 292 (3d Cir. 1980)) (emphasis in original).

Graffam cites *Dyer v. Me. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, for the proposition that "[s]ummary judgment is appropriate even when concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (quotations omitted). *Dyer* is easily distinguishable. A well-developed summary judgment laid the basis for the Court's determination that a rational basis existed for finding an exigency justifying MDOT's exercise of eminent domain. *Id.*, ¶ 11. Under the circumstances of that case, "bald assertions" and opinions by way of affidavit were insufficient to raise a genuine issue of material fact. *Id.*, ¶ 21.

Here, Brown does not rely on "improbable inferences" or "unsupported speculation." *See id*, ¶ 14. On the contrary, her affidavit tells a credible story from which bad faith can be readily inferred without requiring speculation. The Court also notes that Graffam relies solely on his own affidavit for the conclusory proposition that his actions were not undertaken in bad faith. In essence, Graffam is asking the Court to choose his version of the truth. The Court cannot make

7

such a choice on a motion for summary judgment. *M.P. Assocs.*, 2001 ME 22, ¶ 12, 771 A.2d 1040.

In sum, this is not a case where Brown is calling on the Court to second-guess Graffam's business judgment: her Complaint directly attacks Graffam's motives in negotiating the transaction for the sale of EMG4, and her affidavit makes a showing that Brown's actions were motivated primarily by bad faith. There are serious factual questions about Graffam's motivations that would be inappropriate for the Court to resolve on summary judgment. The motion for summary judgment on Count II is **denied**.

## IV.     GROUNDS FOR SUMMARY JUDGMENT ON REMAINING CLAIMS

Graffam proffers independent arguments for summary judgment specific to the remaining counts. The Court addresses each in turn.

### A.  Count I: Imposition of a Constructive Trust

Graffam argues that Count I (constructive trust) should be dismissed for failure to state a claim because a "claim for constructive trust is not an independent ground for relief. Rather, it is a remedy and depends on other substantive claims for survival." *See Francis v. Stinson*, 2000 ME 173, ¶ 32 n.5, 760 A.2d 209. (Mot. S.J. 4.) Brown offers no argument in opposition.

Graffam's argument for dismissal is meritless. *Francis* merely stands for the proposition that a constructive trust is an equitable remedy but not a cause of action. Our Law Court has expressly stated that it is nonetheless "appropriately pled" as a Count in a complaint. *See Burdzel v. Sobus*, 2000 ME 84, ¶ 5 n.3, 750 A.2d 573. The motion for summary judgment is **denied** as to Count I.

### B.  Count III: Conversion

8

Graffam argues that a conversion claim can be made only for concrete, tangible items and cannot be based upon a general obligation related to intangible assets. (Mot. S.J. 5.) Graffam cites authority from other jurisdictions for this proposition, which Brown counters is inapplicable because the cases cited deal with creditor-debtor relationships, which are not analogous to the case under review. (Mot. S.J. 6, Opp. Mot. S.J. 8.)

> The necessary elements to make out a claim for conversion are: (1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798 (citing *Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 457 (Me. 1993)). "The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *Id.* (quoting *Gen. Mot. Accept. Corp. v. Anacone*, 160 Me. 53, 197 A.2d 506 (1964)). *See also* Simmons, Zillman & Gregory, *Maine Tort Law* § 6.11 at 137-39 (1999 ed.).

The Court concludes that Brown has not adduced prima facie evidence of each element of the cause of action for conversion; specifically, Brown has not shown what property she had a right to possess or how Graffam interfered with her right to possession of that property. Brown seeks to recover damages based on Graffam's actions undertaken in furtherance of the sale of EMG4—this potentially implicates Brown's property interest in EMG4 generally, but in order to satisfy the elements of conversion, Brown is required to show how her right to *possession* specifically has been infringed. *See id.* Graffam may have breached the Operating Agreement or be liable for misrepresentation regarding the asset allocation in the transaction, but the facts adduced in the affidavits before the Court do not show that Graffam has interfered with Brown's right to possess anything.

9

The Court therefore **grants** Graffam's motion for summary judgment as to Count III. Brown has failed to adduce prima facie evidence for the tort of conversion.

## C. Count IV: Unjust Enrichment

Graffam argues that he is entitled to summary judgment on Count IV because the existence of a contractual relationship (*i.e.* the Operating Agreement) "precludes recovery on a theory of unjust enrichment." *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863. (Mot. S.J. ¶ 6-7.) Because Brown's claim to the proceeds of the sale of EMG4 is dependent upon her contractual relationship with Graffam, Graffam argues that it is that agreement which defines their rights and responsibilities. (*Id.*) Brown counters that it would be premature to award summary judgment in favor of Graffam on Count IV at this stage because a factfinder could find that no contract exists and still award recovery for unjust enrichment. *See June Roberts Agency v. Venture Props.*, 676 A.2d 46, 49 n.1 (Me. 1996). (Opp. Mot. S.J. 8.)

In their respective statements of material fact and in argument, both sides assert that the Operating Agreement is a valid contract that governs their relationship vis-à-vis EMG4. (Supp'g S.M.F. ¶¶ 4-5; Opp. S.M.F. ¶¶ 5-6.) The Operating Agreement is part of the summary judgment record. Brown's unjust enrichment claim arises out of her interest in EMG4, which is indisputably governed by the Operating Agreement. (*Id.*) The Court therefore disagrees with Brown that a factfinder could find that no contract exists yet find that she is entitled to recovery on an unjust enrichment theory. Furthermore, Brown has not adduced prima facie evidence of the elements of unjust enrichment. Brown's Opposition merely recites the elements of unjust enrichment and is completely void of citations to the statement of material facts that could satisfy those elements, or even any argument as to why the elements are satisfied. *Cf. America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249 ("merely reciting the elements of a claim is not enough" for a

10

claim to survive a motion to dismiss). The Court therefore **grants** Graffam's motion for summary judgment as to Count IV.

    D. Count VI: Misrepresentation

Graffam argues that he is entitled to summary judgment on count VI because "everything [he] told [Brown] was accurate." (Mot. S.J. 7.) Brown counters that there is a genuine issue of material fact on that issue. (Opp. Mot. S.J. 9.) Both sides cite to their respective statements of material fact in support of their positions. (*Id.*)

The Court is thus squarely presented with two competing versions of the truth; *viz.*, either Graffam led Brown to believe that EMG4 was allocated $1,200,000 of the total package deal and lied when he did so, or he always told Brown that the allocation was $800,000 and was otherwise truthful. (Supp'g S.M.F. ¶ 12; Opp. S.M.F. ¶¶ 11, 18.) Graffam's purported mendacity is a material factual issue in this case. Summary judgment cannot be granted in Graffam's favor on the grounds that "everything he told Brown was accurate."

In his reply brief, Graffam raises an alternative ground for dismissal of Count VI: that the claim of fraud was not plead with the requisite particularity required by M.R. Civ. P. 9.[1] A motion for summary judgment is not the proper mechanism to challenge the sufficiency of a pleading. *Cf.* M.R. Civ. P. 12(b)(6). Instead, the question now is whether Brown has adduced prima facie evidence of the elements of the tort of fraudulent misrepresentation. To prevail on a claim of fraudulent misrepresentation, Brown must show (1) that Graffam made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard for whether it is true or false (4) for the purpose of inducing Brown to act in reliance upon it and (5) Brown in fact justifiable relied on the representation as true and acted upon it to her detriment. *See Mariello v.*

---

[1] This argument could properly be disregarded by the Court because it is not addressed to "new matter" Brown raised in her opposition brief. *See* M.R. Civ. P. 7(e).

11

*Giguere*, 667 A.2d 588, 590 (Me. 1995). Brown does just so with citations to the record in her opposition to the motion for summary judgment. (Opp. Mot. S.J. 9-10.) The motion for summary judgment is **denied** as to Count VI.

## CONCLUSION

Based on the foregoing IT IS ORDERED:

Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part.

Defendant's motion for summary judgment is **GRANTED** as to Counts III and IV.

Defendant's motion for summary judgment is **DENIED** as to Counts I, II, and VI.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___5/4/18___

_____
Richard Mulhern, Judge
Business and Consumer Court

Entered on the Docket: 5-4-18
Copies sent via Mail ___ Electronically ✓

12

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-17-13 ✔

REBECCA L. BROWN,                              )
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )        ORDER ON DEFENDANT LENI
                                               )        GRONROS' AND PARTIES-IN-
EDWARD M. GRAFFAM, III, and                    )        INTEREST MOTION TO DISMISS
LENI GRONROS,                                  )
                                               )
            Defendants.                        )
_____        )
                                               )
KIMBERLEE S. GRAFFAM; KLMx2,                   )
LLC; and PENOBSCOT BAY ICE CO.,                )
                                               )
            Parties-in-Interest.               )

This matter comes before the Court on Defendant Leni Gronros's ("Gronros"), and the

Parties-in-Interest; Kimberlee Graffam's ("Kimberlee"), KLMx2, LLC's ("KLM"), and Penobscot

Bay Ice Co.'s ("Pen Bay") motion to dismiss the action filed against them pursuant to M.R. Civ.

P. 12(b)(6). Plaintiff Rebecca L. Brown ("Brown") opposed the motion, and Gronros and the

Parties-in-Interest replied. Pursuant to the discretion granted it by M.R. Civ. P. 7(b)(7), the Court

chose to rule on the motion on the briefs without hearing oral argument.

## BACKGROUND FACTS[1]

This case arises out of a disputed transaction for the sale of certain business entities in

Rockport, including the Tolman Pond Market. (Pl's Compl. ¶ 6). Tolman Pond Market's

ownership structure was complex. It was the d/b/a name of T.B. Caliber, Inc., a Maine corporation

---

[1] As noted below, the Court must assume the facts alleged in Ms. Brown's complaint are true for purposes of deciding this motion to dismiss. *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. Nothing in this section should be construed as a finding of fact by the Court.

1

owned by EMG4, LLC, which LLC was itself owned by Plaintiff Rebecca Brown and Defendant Edward M. Graffam, III ("Edward"). (*Id.* ¶¶ 5-6.) Ms. Brown owned 19% of EMG4 and Edward owned 81%. (*Id.* ¶ 5.) Penobscot Bay Ice Co. ("PenBay") is a Maine corporation, of which Party-in-Interest Kimberlee was President during the relevant period. (*Id.* ¶¶ 9,13.) Kimberlee is also a member of KLMx2, LLC, which was also a party to the disputed transaction and is listed as a Party-in-Interest in the complaint, although the complaint does not specify how exactly KLMx2 is involved. (*Id.* ¶¶ 10-11). Kimberlee is Edward's sister; Ms. Brown and Edward were previously married. (*Id.* ¶¶ 3, 22.)

The disputed transaction was a "package deal" for the sale of EMG4 and PenBay to Maritime Energy, Inc. for the purchase price of $2.3 million. (*Id.* ¶ 12.) Ms. Brown alleges that originally the allocation of the sale price was $1.2 million for EMG4 and $1.1 million for PenBay. (*Id.* ¶ 14.) However, at some time prior to closing and without Ms. Brown being informed, Mr. Gronros—Kimberlee's husband—sent an email to EMG4/PenBay's accounting firm directing it to change the allocation to $800K for EMG4 and $1.5 million for PenBay. (*Id.* ¶ 18.) This was allegedly done with the knowledge of all Defendants for the purpose of depriving Ms. Brown from realizing any profit on the transfer. (*Id.* ¶¶ 19-24.)

**STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief

2

under any set of facts that he might prove in support of his claim." *Id.*

## DISCUSSION

The issue on this motion to dismiss is whether Ms. Brown has stated a claim for tortious interference against Mr. Gronros and the Parties-in-Interest, taking all of the facts in Ms. Brown's complaint as true.[2] M.R. Civ. P. 12(b)(6). The elements a plaintiff must prove to prevail on a claim for tortious interference are: "(1) that a valid contract or prospective economic advantage existed, (2) that the defendant interfered with that contract or advantage through fraud or intimidation, and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104.

Ms. Brown does not claim that Mr. Gronros interfered with her prospective economic advantage through intimidation, but through fraud. Tortious interference through fraud consists of five elements:

> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiable relies on the representation as true and acts upon it to the damage of the plaintiff.

*Id.*, ¶ 14. Our Law Court has "since at least 1897" required proof of fraud or intimidation to support a tortious interference claim because "it distinguishes unlawful conduct from conduct inherent in a healthy competitive economic environment." *Id.* ¶ 13, n.5. For that reason, Maine law has never recognized a cause of action for negligent interference with an economic advantage. *Id.*

Ms. Brown alleges Mr. Gronros is liable for tortious interference because at some point between October 5, 2016 and December 20, 2016, he sent an email to the accounting firm for

---

[2] Ms. Brown does not challenge Mr. Gronros's and the Parties'-in-Interest assertion that only Count V (tortious interference) implicates these movants. (Mot. 3-4.)

3

EMG4 directing the CPA to change the allocations of the sale proceeds to reflect a lesser allocation to EMG4 and a greater allocation to Penobscot Bay. (Pl's Compl. ¶ 18.) Ms. Brown further alleges that she was neither aware of nor did she approve of this change, and that Mr. Gronros' action was intentional and done with the knowledge of Edward and Kimberlee for the purpose of ensuring that Ms. Brown received no profit from the sale of EMG4. (*Id.* ¶¶20, 22.) Finally, Ms. Brown alleges that Mr. Gronros' action had the effect of increasing Penobscot Bay's price allocation such that Ms. Brown's rightful share could be placed in an account hidden and concealed from her. (*Id.* ¶ 32). Ms. Brown characterizes Mr. Gronros' action as defrauding Ms. Brown of rightfully entitled funds. (*Id.*) Ms. Brown argues that these allegations sufficiently state a claim for tortious interference through fraud against Mr. Gronros and the Parties-in-Interest.[3]

The Court disagrees. Ms. Brown has failed to allege facts that could support a finding that Mr. Gronros interfered with Ms. Brown's alleged economic advantage through fraud because no affirmative act of fraud is alleged.[4] Although Ms. Brown alleges that Mr. Gronros' acted in a manner contrary to her interests, with the knowledge and approval of other parties to the transaction, Ms. Brown does not allege that Mr. Gronros made a false representation of a material fact with knowledge of its falsity or in reckless disregard of whether it was true or false. *See Rutland*, 2002 ME 98, ¶ 14, 798 A.2d 1104.

If there was a change in the allocation of the proceeds of the sale, Mr. Gronros cannot be

---

[3] The motion to dismiss was brought on behalf of Mr. Gronros, a named defendant in this case, as well as the Parties-in-Interest. However, Ms. Brown's opposition addresses the motion only as it applies to Mr. Gronros. (Pl's Opp. Mot. Dismiss 4.) Regardless, Ms. Brown's complaint fails to state a claim against the Parties-in-Interest for the same reasons it fails to state a claim against Mr. Gronros, as explained *infra*.

[4] Although not raised by Defendants, it is likely that M.R. Civ. P. 9(b)'s heightened pleading standard applies here to the extent that Ms. Brown must allege fraud in order to state a claim as to this count. *See Rutland*, 2002 ME 98, ¶¶ 13-14, 798 A.2d 1104. The Court need not decide which rule applies because even under M.R. Civ. P. 8(b)'s more forgiving notice pleading standard, Ms. Brown failed to allege facts which could support a finding of fraud necessary to prevail on a claim of tortious interference.

4

liable under a fraud theory for communicating that change to the accountant. To put it simply, Ms. Brown does not allege that Mr. Gronros was making a false representation when he emailed the accountant and told him or her that there had been a change to how the sale proceeds should be allocated. With no false representation, there can be no fraud. *Id.* ¶ 14. With no fraud,[5] there can be no tortious interference with a prospective economic advantage. *Id.* ¶ 13.

In sum, because Ms. Brown has not alleged a fact essential to the single count brought against Mr. Gronros and the Parties-in-Interest, she has failed to state a claim against them.

## CONCLUSION

By reason of the foregoing it is hereby ORDERED:

That the Defendant Leni Gronros' and the Parties-in-Interest Kimberlee S. Graffam's, KLMx2, LLC's, and Penobscot Bay Ice Co.'s motion to dismiss is hereby **GRANTED**. All counts are dismissed as to these parties.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 2/6/18

Richard Mulhern
Judge, Business and Consumer Court

Entered on the Docket: 2-6-18
Copies sent via Mail ___ Electronically ✓

---

[5] Ms. Brown has not argued that tortious interference through intimidation applies in this case.

5