STATE OF MAINE
KENNEBEC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2017-209

STATE OF MAINE,
DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
    Plaintiff

**DECISION AND JUDGMENT**

V.

WILLIAM SILBER, M.D.,
    Defendant

## INTRODUCTION AND PROCEDURAL BACKGROUND

Before the court for decision are the respective motions for summary judgment filed by the Department of Health and Human Services ("DHHS" or "Department") and Dr. William Silber, M.D. in this dispute involving the collection of a $10,000 fine assessed against Northern Maine Ambulatory Endoscopy Center ("NMAEC"), a dissolved corporation that was solely owned by Dr. Silber. The parties agree that there are no genuine issues of material fact. They differ, however, on the question of which party is entitled to judgment as a matter of law.

DHHS commenced this action against Dr. Silber by the filing of a one-count complaint on November 28, 2017 alleging breach of contract as a result of Dr. Silber's failure to pay $10,000 owed to the Department by NMAEC. Dr. Silber filed a timely answer on December 8, 2017. On May 4, 2018, DHHS filed its Motion for Summary Judgment supported by the affidavits of Sarah Taylor and Beth Ketch. Dr. Silber objected to the Department's summary judgment request and moved for summary judgment in his favor on July 27, 2018. His motion was supported by the

affidavit of Attorney Christopher Taintor, Esq. Both parties have filed reply memoranda, with the last one being received by the court on August 30, 2018. The parties have waived oral argument on the motions.

The undisputed material facts are taken from the summary judgment record and are summarized below.

## FACTS

On December 9, 2009, Dr. Silber signed a "MaineCare/Medicaid Provider Agreement" on behalf of NMAEC as the named "Provider." Dr. Silber signed the Provider Agreement as "CEO." On December 7, 2009, he also signed a "Disclosure of Ownership and Control Interest Statement," listing himself as the sole owner of NMAEC. Beth Ketch, an official of DHHS, signed the Provider Agreement on February 5, 2010 on behalf of the Department.

Section D (3) of the Provider Agreement is entitled: "Liability of Provider for Debts Owed to the Department." In accordance with Section D(3)(b) "[t]he Department may collect any debts, including overpayments, through offset or recoupment against amounts owed by the Department to the Provider, or any other method of collecting debts, consistent with relevant statutory and regulatory provisions, including 22 M.R.S.A. §1714-A."

Of particular significance in this case is the language of Section D(3)(c) which states:

> The liability for debts owed to the Department by the Provider is enforceable against the Provider, including any person who has an ownership or control interest in the Provider, and against any officer, director or member of the Provider who, in that capacity, is responsible for any control or any management of the funds or finances of the Provider.

2

NMAEC was a "healthcare facility" within the meaning of the Rules Governing the Reporting of Sentinel Events" as promulgated by the Division of Licensing and Regulatory Services of DHHS. A 'sentinel event" includes "[a]n unanticipated death . . . unrelated to the natural course of the patient's illness or underlying condition . . . ." A healthcare facility, such as NMAEC, is required to notify the "Sentinel Event Team" (SET) within DHHS of a sentinel event "by the next business day after the event occurred or by the next business day after the facility discovers that the event occurred . . . ." A healthcare facility that fails to report a sentinel event as required by the rules is subject to a financial penalty of not more than $10,000, payable to the State of Maine.

In a letter dated September 11, 2013, Dr. Silber was notified by the Director of the Division of Licensing and Regulatory Services that a financial penalty of $10,000 was being assessed against NMAEC because it failed to report a sentinel event involving the death of a patient. Dr. Silber sought an administrative hearing to contest the imposition of the fine. That hearing was rescheduled several times at Dr. Silber's request. Ultimately, it was scheduled for September 15, 2014. A few days before the hearing, Attorney Taintor entered his appearance for Dr. Silber. His request to postpone the hearing was denied.

The hearing was held as scheduled. In a "Recommended Decision" dated November 6, 2014, the hearing officer recommended that the Commissioner of DHHS find that NMAEC had failed to timely report a sentinel event that occurred on July 10, 2013. With respect to the financial penalty, the hearing officer did not make any recommendation because "[t]here was no evidence presented as to what factors were considered in determining the amount."

3

In a "Final Decision" dated December 23, 2013, the Commissioner accepted the recommendation that NMAEC failed to report a sentinel event, but did not accept the recommendation regarding the $10,000 fine. Rather, the Commissioner found that the $10,000 civil penalty was appropriate and was not "'grossly disproportional' to the provider's undisputed complete failure to report an undisputable sentinel event."

After receiving the "Final Decision," Attorney Taintor contacted Dr. Silber and discussed with him, via email, the next course of action. With respect to filing a Rule 80C appeal, Attorney Taintor suggested that the only reason not to file such an appeal was if NMAEC was insolvent and "we are convinced that the Department would never try to collect the fine from Dr. Silber personally." Attorney Taintor expressed uncertainly as to whether DHHS could seek to collect the fine from Dr. Silber, but he indicated that he would call DHHS and try to find out.

There is no dispute that on January 16, 2015, Attorney Taintor called DHHS and was referred to and spoke with Sarah Taylor, the Assistant Director, Medical Facilities within the Division of Licensing and Regulatory Services. In ¶ 7 of the Defendant's Statement of Additional Facts (*DSAF*), Dr. Silber asserts that Attorney Taintor "contacted the Maine Department of Health and Human Services to ask whether the Department regarded the fine that had been levied against NMAEC as being enforceable solely against the corporation, or whether the Department might seek to enforce the fine against Dr. Silber personally." Attorney Taintor's sworn affidavit was cited as the record reference. DHHS has given a "qualified" response to that additional fact as follows: "Attorney Taintor asked Ms. Taylor if the Sentinel Event statute or rules require the penalty to be paid by the facility or the individual." DHHS cited to Taintor's Affidavit ¶ 17 and

4

Exhibit 7 attached thereto, which is a two-line email Sarah Taylor wrote to other officials within DHHS on January 16, 2015 confirming that she spoke with Attorney Taintor and that "[h]e asked if the SE statute/rules require the CMP to be paid by the facility (which is now defunct) or the individual."

Similarly, in ¶ 8 of the Defendant's Statement of Additional Facts, Dr. Silber has asserted that Attorney Taintor "explained to Sarah Taylor, . . . that he was deciding whether to seek judicial review of the Final Decision of the Commissioner." Attorney Taintor's affidavit is again cited. In response, DHHS denied this statement as follows: "Sarah Taylor does not mention discussing judicial review of the Commissioner's decision in her emails memorializing her discussions with Attorney Taintor." In support of this denial DHHS cited to the Taintor affidavit, ¶¶ 17-18 and Exhibits 7 & 8 attached thereto. Exhibit 8 is an email from Sarah Taylor to other DHHS officials and reads as follows:

> Chris Taintor had called last week regarding the SE financial penalty and if it would be levied against the corporation or the physician. I have been in touch with Renee about this. She determined that NMAE [sic] is/was a corporation and that the rules indicate that the financial penalty is against the facility – in this case the corporation. I spoke to Chris and let him know this. I asked him if the corporation had gone through bankruptcy – he is not sure. I asked him to find out and if it filed bankruptcy, to get us bankruptcy paperwork. Chris said that the corporation is insolvent – has no assets, etc.

Dr. Silber maintains that the Department has not "properly controverted" the additional statements in ¶¶ 7 & 8 as required by M.R.Civ.P. 56(h)(2) & (3) because it has not refuted the factual statements but has merely referred to the contents of Ms. Taylor's emails.

5

Furthermore, DHHS denied ¶¶ 10, 12 and 13 of the statement of additional facts submitted by Dr. Silber. Those statements of additional facts read as follows:

10. The attorney for NMAEC and Dr. Silber explained to Ms. Taylor that if DHHS would not seek to enforce the fine against Dr. Silber personally, he would not prosecute an appeal of the Final Decision. Taintor Affidavit ¶ 14.

12. In reliance on Sarah Taylor's representation that the fine that had been imposed against NMAEC was enforceable only against NMAEC, and not against Dr. Silber personally, the attorney for NMAEC and Dr. Silber chose not to prosecute a Rule 80C Petition for Review. Taintor Affidavit ¶¶19-22.

13. The reliance by Dr. Silber's and NMAEC's counsel on Sarah Taylor's representations – that DHHS had the authority to enforce the fine only against the corporation, and not against Dr. Silber personally – was reasonable. Taintor Affidavit ¶¶12, 13, 23.

The denials by DHHS to these statements were made without any record citation. Although Sarah Taylor submitted an affidavit as part of the Department's initial motion for summary judgment, nothing in that affidavit addresses the additional statements of fact submitted by Dr. Silber in support of his motion for summary judgment, particularly her telephone contacts with Attorney Taintor in January, 2015.

The court agrees with Dr. Silber that the Department has not properly controverted his statements of additional facts as made in ¶¶ 7,8,10, 12 and 13 as required by M.R.Civ.P. 56(h). A party replying to an opposition to a motion for summary judgment shall respond to any additional facts by admitting, denying or qualifying such additional facts "and unless a fact is admitted, shall

6

support each denial or qualification by a record citation as required by paragraph (4) of this rule." Paragraph (4) provides that facts in an opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Rule 56(e) provides that when a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials in that party's pleading, but must respond by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial."

With respect to ¶¶ 7 and 8 of the additional statement of facts, the Department responded with a qualification and a denial respectively, and in each instance cited to Ms. Taylor's emails. The problem with those responses, however, is that they do not controvert the statements of fact asserted in the affidavit of Attorney Taintor. Ms. Taylor's emails are part of the summary judgment record, but they are only her summary and memorialization of what she and Attorney Taintor spoke about. They do not controvert or refute the statement of facts contained in ¶¶ 7 & 8. Accordingly, those facts must be deemed to be admitted.

Even assuming that ¶¶ 7 & 8 have been "properly controverted," the statement of additional facts in ¶¶ 10, 12 and 13 clearly were not. The denials include no record citation and there is no affidavit evidence controverting those statements of fact. Thus, those statement of facts must be taken as admitted.

From the summary judgment record, it appears that Attorney Taintor drafted a Rule 80C petition for review of the Final Decision of the Commissioner but never filed it on behalf of NMAEC and Dr. Silber. They are,

7

of course, jurisdictionally barred from doing so now. *Mutty v. Department of Corrections*, 2017 ME 7, ¶ 8, 153 A.3d 775.

DHHS sent letters to Dr. Silber on January 22, 2015 and May 31, 2016 seeking collection of the $10,000 financial penalty assessed against NMAEC. The financial penalty remains unpaid.

## SUMMARY JUDGMENT STANDARD OF REVIEW

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me. 1995). "A trial court properly grants summary judgment for the movant if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796 A.2d 683 (citing *Stanton v. University of Maine Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact-finder to choose between competing versions of the facts. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.2d 774.

## DISCUSSION

The Department contends that it is entitled to judgment as a matter of law on the basis of Section D (3)(c) of the Provider Agreement that authorizes it to enforce the collection of a debt owed to it against the owner of the provider, in this case Dr. Silber as the sole owner of NMAEC.

Dr. Silber counters that he is entitled to judgment as a matter of law because: (1) DHHS cannot enforce collection of the fine against him personally since he was not a party to the Provider Agreement; (2) the fine or financial penalty assessed against NMAEC is not a "debt" within the meaning of the

8

Provider Agreement, and; (3) the Department's attempt to collect the fine from Dr. Silber personally should be barred on the basis of equitable estoppel.

## A. **The Breach of Contract Claim Under Section D (3)(c) of the Provider Agreement**

Dr. Silber argues that he cannot be personally liable for the debt of NMAEC because he was never personally a party to the Provider Agreement and that to hold him personally liable under Section D (3)(c) required his separate explicit consent to be bound individually. The court disagrees.

The cases relied upon by Dr. Silber in support of his contention are not on point with the facts of this case. Dr. Silber signed the Provider Agreement as CEO of NMAEC, the provider. Dr. Silber also signed and submitted the Disclosure of Ownership and Control Interest Statement. He knew that by seeking to become a provider and participate in the MaineCare/Medicaid program he was potentially personally liable for a debt of NMAEC to the Department. He gave his consent to be bound by Section D (3)(c) by signing the Provider Agreement and certifying that he was the sole owner of NMAEC.

*Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 299 (Me. 1988) did not involve language similar to Section D (3)(c) nor did the defendant in that case sign an agreement containing such language. Similarly, in *McCarthy v. Azure*, 22 F.3d 351, 356, 358-59 (1st Cir. 1994) the court could find "no overt indication" that it was intended that the defendant be individually subject to arbitration when he signed an arbitration agreement in his corporate capacity only. Here, there is clear and overt evidence in Section D (3)(c) that the owner of NMAEC – Dr. Silber – and the Department knew and intended that as the sole owner of the provider, Dr. Silber could be personally responsible for his company's debt to the Department. *See also Stroll v. Epstein*, 818 F.Supp. 640, 643-44 (S.D.N.Y. 1993) (intention of parties was that defendant was acting in representative

capacity only); *Fleming & Assoc., L.L.P. v. Barton*, 425 S.W.3d 560, 576 (Tex. App. 2014) (agent may consent to liability in addition to principal and that consent may be express or can arise from the circumstances). In short, the court finds that Dr. Silber and DHHS intended that he be bound in his individual capacity in accordance with Section D(3)(c) when he signed the Provider Agreement.

Further, Dr. Silber contends that Section D (3)(c) is a guaranty contract and a separate agreement binding him personally should have been executed. *See Top Line Distributors, Inc. v. Spickler*, 525 A.2d 1039 (Me. 1987); *Bunker v. Ireland*, 17 A. 706 (Me. 1889). Neither of the cases cited involved the specific language of Section D (3)(c) of the Provider Agreement whereby Dr. Silber, by signing the agreement, also agreed that the Department could enforce collection of debts owed to it by NMAEC against him personally as the owner of the provider.

### B. Is a Civil Penalty/Fine a Debt?

Dr. Silber argues that the $10,000 financial penalty imposed by the Commissioner for the sentinel event violation is not a "debt" within the meaning of Section D (3)(c) of the Provider Agreement. Rather, he contends that the word "debt" means only a "MaineCare-related debt." *Defendant's Memorandum at 11.* The court disagrees.

Dr. Silber goes to great lengths to create an ambiguity around the word "debt" when, in the court's view, none exists at least in the context of the $10,000 financial penalty. Section D (3)(b) of the Provider Agreement states: "The Department may collect any debts, including overpayments, through offset or recoupment against amounts owed by the Department to the Provider, or any other method of collecting debts, consistent with the relevant statutory and regulatory provisions, including 22 M.R.S.A. §1714-A." (emphasis added).

Title 22 M.R.S. §1714-A (1)(B) provides that "Debt" is defined to include "any amount of money that is owed to the Department as a result of: (3) The assessment of fines and sanctions." The term "provider" is defined in section 1714-A(1)(H) to mean "a person [including a corporation] reimbursed by the department for the provision of healthcare services."

The phrase "any debts" and the specific reference to section 1714-A makes it clear that debts as used in Section D (3)(b) & (c) of the Provider Agreement includes fines and sanctions imposed against a provider and owed to the Department. To construe the term "debt" as suggested by Dr. Silber would require the court to re-write the Provider Agreement in a manner clearly at odds with its plain meaning.

## C. Should the Department be Equitably Estopped?

Dr. Silber contends that the Department should be equitably estopped from asserting a claim against him in his individual capacity for collection of the $10,000 civil penalty as a result of the sentinel event violation.

In *John F. Murphy Homes, Inc. v. State*, 2017 ME 67, ¶ 22, 158 A,3d 921, the Law Court addressed the issue of granting summary judgment in the context of a claim of equitable estoppel.

> Summary judgment, although characterized as entitlement to judgment as a matter of law, may be granted in actions involving claims for equitable relief, such as Murphy Homes's equitable estoppel claim , when '(1) there is no genuine issue of material fact affecting either the equitable claims or the equities to be considered in deciding to take action, and (2) the opponent of the motion has been afforded sufficient opportunity to present affidavits or other sworn evidence and legal argument.'

*Quoting Hutz v. Alden*, 2011 ME 27, ¶ 11, 12 A.3d 1174.

11

There is no question that the Department has been given sufficient opportunity to present affidavits or other sworn evidence in opposition to Dr. Silber's motion for summary judgment on the basis of equitable estoppel. Dr. Silber must present "clear and satisfactory" evidence demonstrating the following: "(1) the governmental official or agency made misrepresentations, whether misleading statements, conduct, or silence, that induced the party to act; (2) the party relied on the government's misrepresentations to his or her detriment; and (3) the party's reliance was reasonable." *State v. Brown*, 2014 ME. 79, ¶14, 95 A.3d 82 *citing Dep't. of Health & Human Servs. V. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. Equitable estoppel against the government "should be sparingly used; "should be viewed with caution;" and is not to be applied against the government to the same extent as it might be applied to a private party. *See, e.g, Mathieu v. Comm'r of Human Servs.*, 562 A.2d 686, 689 (Me. 1989); *Pelletier*, 2009 ME. 79, ¶ 19; *Hart v. County of Sagadahoc*, 609 A.2d 282, 284 (Me. 1992). *See also T. Comm'r of Health & Human Servs.*, 2012 ME 13, ¶ 10, 36 A.3d 888.

The Law Court has advised that when analyzing a claim of equitable estoppel against a governmental entity, the court should consider "the totality of the circumstances, including the nature of the particular governmental entity, the particular governmental function being discharged, and any considerations of public policy arising from the application of estoppel to the governmental function." *Town of Union v. Strong*, 681 A.2d 14, 19 (Me. 1996). *See also State v. Brown*, 2014 ME 79, ¶14. "Whether the facts of a case give rise to an estoppel is a question of law for the court." *Id; Brown*, 2014 ME 79, ¶ 16.

Based on the summary judgment record, the court finds that it is undisputed that Attorney Taintor contacted Dr. Silber after receiving the Final

Decision of the Commissioner. His email to Dr. Silber makes it clear that the issue he needed to resolve, before deciding whether to recommend the filing of a Rule 80C petition for judicial review, was whether the Department would seek to enforce the $10,000 civil penalty against Dr. Silber personally. That was the specific reason Attorney Taintor called DHHS on January 16, 2015 and spoke to Ms. Taylor. Ms. Taylor's email confirms that Attorney Taintor was inquiring as to whether the penalty "was to be paid by the facility (which is now defunct) or by the individual."

The uncontroverted material fact is that Attorney Taintor explained to Ms. Taylor that he was making this inquiry because "he was deciding whether to seek judicial review of the Final Decision of the Commissioner." *DSAF, ¶¶ 7 & 8.* Moreover, it is uncontroverted that Attorney Taintor "explained to Ms. Taylor that if DHHS would not to seek to enforce the fine against Dr. Silber personally, he would not prosecute an appeal of the Final Decision." *DSAF, ¶ 11.* It is uncontroverted that after consulting with other officials within DHHS, Ms. Taylor informed Attorney Taintor on January 21, 2015 "that the fine ran only against NMAEC, and not against Dr. Silber personally." *DSAF, ¶ 11.* It is uncontroverted that Attorney Taintor and Dr. Silber relied on Ms. Taylor's representation "that the fine . . . was enforceable only against NMAEC" in making the decision not to file a timely Rule 80C petition for judicial review of the Final Decision. *DSAF, ¶ 12.* Finally, it is uncontroverted that Attorney Taintor's reliance on Ms. Taylor's representation "that DHHS had the authority to enforce the fine only against the corporation, and not against Dr. Silber personally was reasonable." *DSAF, ¶ 13.*

Considering the totality of the circumstances in this case, the court concludes that the summary judgment record supports a finding of equitable

13

estoppel against DHHS in its claim against Dr. Silber in his individual capacity. This case is the uncommon one where the party asserting a claim of equitable estoppel has presented clear and satisfactory evidence that the elements of estoppel have been met.

Here, Ms. Taylor's explanation that the civil penalty was enforceable only against NMAEC, and not against Dr. Silber personally, was incorrect because it did not consider Section D (3)(c) of the Provider Agreement. Attorney Taintor relied on that misleading assurance, to his client's detriment, in deciding not to file a timely Rule 80C petition for judicial review of the Final Decision. Finally, in this case it is uncontroverted that Attorney Taintor's reliance was reasonable. The remedy is that the Department is estopped from asserting a claim against Dr. Silber in his individual capacity for collection of the $10,000 civil penalty imposed on NMAEC as a result of the sentinel event violation. *See Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales,* 1998 ME 53, ¶ 27, 707 A.2d 1311.

## CONCLUSION

The entry is:

Plaintiff's (DHHS) Motion for Summary Judgment is DENIED.

Defendant's (Silber) Motion for Summary Judgment is GRANTED.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R.Civ.P. 79(a).

Dated: November 5, 2018

William R. Stokes
Justice, Maine Superior Court

14